**MAYES, Appellant,**

v.

**CITY OF COLUMBUS et al., Appellees.**

[Cite as *Mayes v. Columbus* (1995), 105 Ohio App.3d 728.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 94APE09–1316.

Decided Aug. 17, 1995.

730

*Plymale & Associates* and *Andrew W. Cecil; David K. Greer,* for appellant.

*Ronald J. O'Brien,* City Attorney, and *Barbara J. Pfeiffer,* Assistant City Attorney; *David M. Buchman,* City Prosecutor, for appellees.

STRAUSBAUGH, Judge.

Plaintiff-appellant, Albert Mayes, appeals the judgment of the Franklin County Court of Common Pleas which granted defendants-appellees' city of Columbus, Molly Smith and Lorena Schrader's motion for directed verdict. Appellant sets forth the following three assignments of error:

"I. The trial court erred in directing a verdict in favor of Defendants Molly Smith and Lorena Schrader on the claims of malicious prosecution.

"II. The trial court erred in directing a verdict in favor of all defendants on the claims arising under 42 U.S.C. § 1983.

"III. The trial court erred in directing a verdict in favor of Defendant Molly Smith on the claims of false arrest."

The record reveals that on May 5, 1991, the Columbus Police were called to 203 Belvidere on a burglary-in-progress call. Officers Molly Smith and Donald Junk responded to the call. Upon arriving at 203 Belvidere, a woman on the opposite side of the street was gesturing toward 203 Belvidere. Officer Smith testified that a woman identified as "Miss Wilson" met the officers upon their arrival and told them that three black males were still inside the house. Without indicating her presence, Officer Smith kicked in the door. The facts from this point are disputed.

Officer Smith testified that when she entered the house, she observed appellant and two other black men surrounding Dorothy Holland, that Holland had a wad of money in her hand, and that her breasts were exposed. Officer Junk testified that he did not observe Holland's breasts being exposed, nor did the police report contain any mention of this fact. Officer Smith and Officer Junk forced appellant and the other two men out of the apartment at gunpoint. No weapons or contraband was found on either of the men. Appellant was asked by Officer Smith whether he had any money on him. Officer Smith testified that appellant stated that he did not have any money on him; however, $48 was found inside his

pants pocket after he was searched. The record reveals that the $48 remained in appellant's possession.

Appellant's explanation of the events are as follows: Appellant lived approximately five houses down the street from Holland. Appellant and other witnesses describe Holland as a senile elderly woman whose mind "comes and goes." Appellant explained that from 1990 to May 1991, he performed a number of odd jobs for Holland, including shoveling snow, cutting grass, moving furniture, finding her dog and fixing her thermostat. Appellant stated that on occasion he had taken Holland dinner or lunch. He further testified that several others in the neighborhood also looked out for Holland. On the day in question, appellant and two of his friends were walking to appellant's house when Holland called out to appellant and asked if he could come and help her. Appellant and his two friends walked over to Holland's house. Appellant testified that he asked Holland's permission for his friends to come inside also, and Holland said "yes." Holland explained to appellant that she had misplaced her purse. Appellant testified that Holland stated that she lost her purse because she had just paid the paper boy. Appellant said he knew that Holland was not in her right mind because it was Sunday, and he didn't think that the paper boy collected on Sunday. One of his friends saw her purse lying beside the couch and handed it to Holland. Appellant testified that Holland took the money out of the purse and began clutching it in her hands, explaining again that she had just paid the paper boy. Appellant testified that before the police arrived, the telephone rang. The police report completed by Officer Junk corroborated this testimony as Junk indicated therein that before the police arrived, a neighbor, JoAnn Alexander, who resided at 204 Belvidere, called Holland and asked if she was okay. Holland stated to the caller, "My friends are here to help me find my money." A few minutes later, the police arrived and kicked in the door. The officers entered the house with weapons drawn. Appellant, startled, tried to explain the situation to the officers, but was told to put his hands up. Appellant and the other two men were handcuffed and escorted outside. Appellant testified that Officer Smith tripped him, physically slammed him down on the front porch by the back of his neck, and searched him. Officer Smith would not listen to appellant's attempt to explain the matter. Appellant stated that Holland, who had calmed down after finding her money, began shaking and crying during the commotion.

The three men were taken to police headquarters where appellant was interviewed by Detective Lorena Schrader. Appellant informed Detective Schrader that he had permission to be in Holland's house. Detective Schrader met with Holland later, and concluded that she was incompetent to testify at trial. Detective Schrader testified that she was unable to determine if there was any property missing from Holland during her investigation. In fact, the police

reports completed by Officer Smith and Officer Junk stated "no loss." Additionally, no one else interviewed by Detective Schrader had any knowledge of any property stolen from Holland.

Officer Smith initiated a prosecution by filing a criminal complaint against appellant in the Franklin County Municipal Court on May 5, 1991. Detective Schrader referred a detailed investigation packet to the prosecutor's officer recommending aggravated burglary against appellant. Detective Schrader testified that she did not include in the four-page investigative summary packet any mention of Holland's statement that "[m]y friends are here to help me find my money," that was contained in the reports prepared by the officers. The grand jury returned an indictment for aggravated burglary and robbery against appellant and his two friends.

Appellant remained in jail until July 22, 1991, the day his case came to trial. Appellant's case was jointly tried with one of the other men. Following presentation of the state's case, the trial judge ordered a directed verdict of acquittal in favor of both appellant and the other man. The acquittal was journalized by entry on July 23, 1991.

Subsequently, appellant filed the instant civil action in the Franklin County Court of Common Pleas against the city of Columbus, Molly Smith, Donald Junk and the Columbus Division of Police, for false arrest, malicious prosecution, and violation of Section 1983, Title 42, U.S.Code. On September 9, 1992, appellant filed an amended complaint naming Detective Lorena Schrader as an additional defendant.

On May 4, 1993, appellees filed a motion for partial summary judgment on the false arrest and malicious prosecution claims. The trial court granted summary judgment on the false arrest claims but denied summary judgment with respect to the malicious prosecution claims on July 30, 1993.

The trial began on July 25, 1994. Sometime during the course of the trial, appellant dismissed Donald Junk from the case. Appellant called several neighbors to testify in his behalf. After appellant presented his case, the trial court granted appellees' motion for directed verdict on all claims. This decision was journalized on August 12, 1994. Appellant appeals the trial court's decision.

Appellant's first two assignments of error concern whether the trial court erred in granting a directed verdict on appellant's claim of malicious prosecution and his claim under Section 1983, Title 42, U.S.Code against Officer Molly Smith, Detective Lorena Schrader and the city of Columbus. Civ.R. 50(A)(4) governs the trial court's grant of a directed verdict and provides, in pertinent part:

"When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against

whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue."

In discussing a motion for directed verdict in *Ruta v. Breckenridge–Remy Co.* (1982), 69 Ohio St.2d 66, 68–69, 23 O.O.3d 115, 116, 430 N.E.2d 935, 938, the Ohio Supreme Court wrote:

"[W]hat is being tested is a question of law; that is, the legal sufficiency of the evidence to take the case to the jury. This does not involve weighing the evidence or trying the credibility of witnesses; it is in the nature of a demurrer to the evidence and assumes the truth of the evidence supporting the facts essential to the claim of the party against whom the motion is directed, and gives to that party the benefit of all reasonable inferences from that evidence. The evidence is granted its most favorable interpretation and is considered as establishing every material fact it tends to prove. * * *"

Therefore, when ruling on a motion for directed verdict, the trial court must construe the evidence most strongly in favor of the nonmoving party and the trial court is further prohibited from weighing the evidence or questioning the credibility of any witness. See, also, *The Limited Stores, Inc. v. Pan Am. World Airways, Inc.* (1992), 65 Ohio St.3d 66, 600 N.E.2d 1027; *Blair v. Property Mgt. Consultants* (1987), 40 Ohio App.3d 103, 531 N.E.2d 752. Additionally, all reasonable inferences which may be drawn from the evidence must be made on behalf of the nonmoving party. *Rinehart v. Toledo Blade Co.* (1985), 21 Ohio App.3d 274, 21 OBR 345, 487 N.E.2d 920. From this point, we now consider appellant's first and second assignments of error.

In his first assignment of error, appellant contends that the trial court erred in directing a verdict in favor of Officer Molly Smith and Detective Lorena Schrader on the common-law malicious prosecution claims. To sustain an action for malicious criminal prosecution, the appellant must plead and prove by a preponderance of the evidence (1) malice in instituting or continuing the prosecution, (2) a lack of probable cause for undertaking the prosecution, and (3) termination of the prosecution in favor of the accused. *Trussell v. Gen. Motors Corp.* (1990), 53 Ohio St.3d 142, 559 N.E.2d 732.

Appellees do not dispute that appellant has satisfied the third element of his claim. Appellant was acquitted on July 22, 1991 of the charges of aggravated burglary and robbery. We now turn to see if appellant has met his burden of proof on the first and second elements of malicious prosecution.

The first element of a malicious prosecution action requires that appellant set forth evidence that his prosecution was instituted or continued with

malice. The Ohio Supreme Court has defined "malice" for purposes of a claim of malicious criminal prosecution as "an improper purpose, or any purpose other than the legitimate interest of bringing an offender to justice." *Criss v. Springfield Twp.* (1990), 56 Ohio St.3d 82, 85, 564 N.E.2d 440, 443. In determining whether a criminal prosecution was instituted or continued for an improper purpose, inquiry must be made into the basis for the decision to prosecute. In the absence of evidence showing a basis for the decision, it will appear to have been made without any basis, *i.e.*, maliciously. *Id.* at 85, 564 N.E.2d at 443. Thus, the absence of probable cause is the gist of an action for malicious prosecution, and malice may be inferred from the absence of probable cause. *Melanowski v. Judy* (1921), 102 Ohio St. 153, 131 N.E. 360, paragraph one of the syllabus; see, also, *Evans v. Smith* (1994), 97 Ohio App.3d 59, 646 N.E.2d 217.

 The determination of whether a criminal prosecution was undertaken in the absence of probable cause entails an inquiry into the facts and circumstances actually known to or reasonably within the contemplation of the defendant police officers at the time of the instigation of criminal proceedings. *McFinley v. Bethesda Oak Hosp.* (1992), 79 Ohio App.3d, 613, 616–617, 607 N.E.2d 936, 938–940, citing *Melanowski, supra.* For purposes of a claim of malicious prosecution, a criminal prosecution was undertaken without probable cause if the defendants instituted or continued the prosecution without a "reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the person accused [was] guilty of the offense with which he [was] charged * * *." *McFinley, supra,* at 617, 607 N.E.2d at 939; *Evans, supra.*

The trial court, in its decision directing a verdict in favor of appellees, found that probable cause existed for the institution and continuance of the prosecution. The trial court based its decision on *Deoma v. Shaker Hts.* (1990), 68 Ohio App.3d 72, 77, 587 N.E.2d 425, 428, wherein the Court of Appeals for Cuyahoga County held that:

"The return of an indictment by the grand jury is evidence of probable cause; when an indictment has been returned by the grand jury, the plaintiff has the burden of producing substantial evidence to establish lack of probable cause. * * * Plaintiff must produce evidence to the effect that the return of the indictment resulted from perjured testimony or that the grand jury proceedings were otherwise significantly irregular. * * *" (Citations omitted.)

The trial court found that the only evidence presented by appellant was that he had been indicted by the Franklin County Grand Jury. The court stated that appellant offered no evidence to rebut the presumption that there was probable cause for the charge of aggravated burglary and robbery to be filed against him.

On that basis, the trial court directed a verdict in favor of Officer Smith and Detective Schrader on the issue of malicious prosecution.

However, this court finds that the trial court misinterpreted the holding of the *Deoma* case, which relied on *Adamson v. May Co.* (1982), 8 Ohio App.3d 266, 8 OBR 358, 456 N.E.2d 1212. In *Adamson*, the court held that in a malicious prosecution action, a grand jury indictment in the criminal prosecution creates a rebuttable presumption that defendants had probable cause to prosecute, unless the plaintiff shows those proceedings received perjured testimony or were otherwise significantly irregular. However, the court also noted that grand jury evidence is usually secret and beyond the reach of a plaintiff. Therefore, the court went on to state that "[i]f one party relies on a presumption and his adversary introduces evidence of a substantial nature which counterbalances the presumption, it disappears. * * * Absent a controlling presumption, conflicting evidence about the defendant's probable cause to believe the plaintiff had committed an offense presents a factual issue that should be resolved by the jury." *Id.* at 270, 8 OBR at 363, 456 N.E.2d at 1217.

Further, contrary to the trial court's finding, appellant did present substantial evidence which, if believed, would establish the lack of probable cause. First, appellant submitted a copy of the police reports completed by Officer Smith and Officer Junk. The police reports indicate that, "before [the] police arrived, wit # 6 [JoAnn Alexander] phoned wit # 4 [Dorothy Holland] to see if she was ok. Wit # 4 [Dorothy Holland] stated 'My friends are [here] to help me find my money.'" The last sentence of the arrest report stated "no loss from wit # 4 [Dorothy Holland]."

The complaint filed by Officer Smith charged appellant with aggravated burglary. The complaint states that appellant did "by force trespass in an occupied structure, to wit: forced entry into the front door of 203 Belvidere Avenue with purpose therein to commit a theft offense, to wit: Theft 2913.02 O.R.C. and said occupied structure is the permanent habitation of a person, to wit: Dorothy Holland and when she was present[.]" The aggravated burglary statute, R.C. 2911.12(A), provides, in pertinent part:

"No person, by force, stealth, or deception shall * * * (1) [t]respass in an occupied structure * * * with purpose to commit therein any theft offense * * *."

Contrary to the charging instrument, Officer Smith testified that as she approached the house, she did not notice any signs of forced entry. She testified that she did not hear anything coming from the inside of the house, anyone calling for help, or any sign of a fight or struggle taking place inside. Officer Junk corroborated Officer Smith's testimony. Officer Junk testified that upon arrival at 203 Belvidere he did not notice anything unusual. He stated that he

did not hear anything unusual coming from the house. Both officers testified that they did not observe a break-in at 203 Belvidere. Officer Junk testified that he did not notice the three men in the room making any menacing or threatening gestures toward Holland when the door was kicked in. Officer Junk also indicated that he saw no evidence of a forcible entry. Further, there was no evidence of trespass. There was no evidence of an intent to commit a theft offense and no evidence of an actual theft.

When asked if she ever inquired of Dorothy Holland about the statement that "[m]y friends are here to help me find my money," Officer Smith stated that she did not. Officer Junk testified that he did not recall speaking to Dorothy Holland at all.

Further, the record is replete with evidence establishing that appellant and others did odd jobs for Holland on a regular basis. Appellant testified that he shoveled her snow on occasion, cut her grass, moved furniture around in her house, found her lost dog, fixed her thermostat, went to the store for her, and occasionally brought her dinner or lunch. Appellant also testified that he observed other neighbors doing odd jobs for Holland.

Ron Hampton, a next-door neighbor, described Holland as a senile elderly lady, who had a tendency to lose things such as her purse, her dog, etc. Hampton told the court that he had known Holland since he was four years old and lived next door to her all of his teenage life and half of his adulthood. He testified that several times a week she would call him crying at the door that she had lost her dog. He stated that he would go in, and the dog would be right there on the couch or upon the bed. Hampton testified that he cut her grass on several occasions, drove her to the bank, helped to keep her yard together, painted and performed other maintenance jobs for her. Hampton testified that Holland would also ask other neighbors when she needed assistance. Hampton testified that he knew others in the neighborhood whose help Holland had sought, including Ronald Alexander, who lived across the street, and appellant. Hampton testified that prior to May 5, 1991, he had seen appellant cutting grass or going to the store for Holland approximately two times a week. He testified further that he knew appellant from the neighborhood, and that he had seen appellant enter Holland's house on several occasions.

Kathleen Butts testified on behalf of appellant. Butts testified that she lived two doors down from Holland from January 1989 until May 1990. During her residence on Belvidere, Butts stated that she observed appellant doing odd jobs for Holland. On several occasions, Butts heard Holland call for appellant as he walked down the street, and appellant would go over to Holland's house to see what she wanted. Butts testified that appellant cut Holland's grass on many occasions and would light her furnace, among other things.

**740**

Detective Schrader testified that she investigated the matter herein after receiving a call from Officer Smith. Detective Schrader stated that she had the opportunity to speak with the appellant and the other two men who were also arrested. She testified that all three of the men also gave her written statements. She testified that Officer Smith told her that Dorothy Holland was not likely to be a good witness. Detective Schrader met with Holland and concluded that she was incompetent to testify. Detective Schrader stated that after investigating the matter, she was unable to ascertain whether any property was missing. Further, Detective Schrader testified that she prepared a four-page investigative summary for grand jury purposes. She stated that she did not include the statement by Dorothy Holland to JoAnn Alexander that "[m]y friends are here to help me find my money." In fact, Detective Schrader testified that she did not include any exculpatory evidence in the four-page summary. This court notes that R.C. 2939.01 *et seq.* imposes no statutory duty upon the prosecutor to present exculpatory evidence to the grand jury. See *State v. Ball* (1991), 72 Ohio App.3d 549, 595 N.E.2d 502; *United States v. Adamo* (C.A.6, 1984), 742 F.2d 927. However, in the interest of justice, if the prosecuting party is aware of any substantial evidence negating guilt he should make it known to the grand jury, at least where it might reasonably be expected to lead the jury not to indict. See *United States v. Ciambrone* (C.A.2, 1979), 601 F.2d 616, 623. Officer Smith testified that the dispatch aired for 203 Belvidere stated that three black males, high on drugs, had just entered an elderly lady's home. Officer Smith admitted that she did not state anything about the men being high on drugs in her deposition taken before trial. Further, Officer Smith testified that when she kicked in the door, the three men were surrounding Holland and Holland's breasts were exposed. Officer Junk testified that he made no such observation. Appellant testified that Holland's breasts were not exposed. Detective Schrader testified that, to his knowledge, Officer Smith made no mention of Holland's breasts being exposed. Further, the police report, completed by Officer Smith, contained no mention of Holland's breasts being exposed, nor was appellant charged with any sex offense.

These facts, if viewed in a light most favorable to appellant, are more than sufficient to rebut the presumed fact of probable cause that results from the indictment. It constitutes evidence of a substantial nature that at least counterbalances the presumed probable cause. Thus, we find that the evidence presented provided sufficient rebuttal for the presumed probable cause to eliminate that presumption as a mandatory inference in ruling on the motion for directed verdict.

As malice may be inferred from the absence of probable cause, appellant has met all elements of a malicious prosecution claim. *Melanowski, supra.*

However, when the defendants in a malicious prosecution action are police officers, an additional issue arises. See *Turrin v. New Philadelphia* (Jan. 2, 1990), Tuscawaras App. No. 89AP030027, unreported, 1990 WL 2882. As employees of a political subdivision, the officers are generally protected by limited statutory immunity. See R.C. 2744.03(A). This provision provides that:

"6. * * * [T]he employee is immune from liability unless one of the following applies:

"(a) His acts or omissions were manifestly outside the scope of his employment or official responsibilities;

"(b) His acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner[.]"

Thus, an officer is overlaid with an additional layer of protection against civil liability—a shield—which must be peeled away before the officer may be held liable on the substantive claim.

Under the present facts, this court finds that appellant has presented sufficient evidence to show that defendants acted with malicious purpose, in bad faith, or in a wanton or reckless manner in arresting appellant and continuing the prosecution against him. Therefore, appellees will not be protected by the limited immunity which generally shields officers of the law.

Accordingly, appellant's first assignment of error is sustained. This court notes, however, that we do not express any view as to the ultimate merits of this controversy. We only find that appellant has presented sufficient evidence to rebut the inference of probable cause to avoid a directed verdict.

By his second assignment of error, appellant argues that the trial court erred in directing a verdict on his claims arising under Section 1983, Title 42, U.S.Code. Section 1983 provides a remedy to persons whose federal rights have been violated by governmental officials. This statute provides:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. * * *"

The purpose of this statute is to protect individuals against misuse of power made possible only because the wrongdoer is clothed with authority of state law. *Duchesne v. Sugarman* (C.A.2, 1977), 566 F.2d 817. Appellant has set forth Section 1983 claims against the city of Columbus, and against Officer Smith and Detective Schrader in their official capacities and in their personal capacities.

■ With respect to appellant's claims under Section 1983, Title 42, U.S.Code against Officer Smith and Officer Schrader personally, we have already decided that appellant has presented sufficient evidence to establish an action based on common-law malicious prosecution, sufficient to overcome a directed verdict. In some instances, a victim of common-law malicious prosecution can show a constitutional violation redressable under Section 1983, Title 42, U.S.Code. See *Toney v. Davis* (C.A.6, 1994), 23 F.3d 408, citing *Dunn v. Tennessee* (C.A.6, 1982), 697 F.2d 121, 125, certiorari denied (1983), 460 U.S. 1086, 103 S.Ct. 1778, 76 L.Ed.2d 349. To do so, in addition to the common-law elements, appellant must show that appellees Smith and Schrader have deprived him of a right secured by the Constitution and the laws of the United States and, second, that appellees deprived him of such constitutional right under color of law. *Adickes v. S.H. Kress & Co.* (1970), 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142; see, also, *Dunn, supra.*

In his complaint, appellant alleges that the actions of appellees Smith and Schrader violated appellant's rights under the Fourth, Fifth, Eighth and Fourteenth Amendments to the United States Constitution, in particular, the right to be secure in his person and property, the right to be free from the excessive and unreasonable use of force, the right to be free from malicious prosecution, and the right to due process of law. Further, appellant alleges that appellees deprived him of such rights under color of law, as municipal police officers. There is no question that Officer Smith and Detective Schrader acted under color of law in arresting and continuing the prosecution against appellant. Further, this court finds that appellant has presented evidence of a constitutional violation sufficient to withstand a directed verdict.

■ The warrantless arrest and detention of a person implicates a right secured by the federal Constitution. The Fourth Amendment to the United States Constitution, made applicable to the states by the Fourteenth Amendment, "requires the States to provide a fair and reliable determination of probable cause as a condition for any significant pretrial restraint of liberty." *Baker v. McCollan* (1979), 443 U.S. 137, 142, 99 S.Ct. 2689, 2694, 61 L.Ed.2d 433, 440–441. Therefore, a warrantless arrest made without probable cause constitutes a violation of the Fourth Amendment and may provide the predicate for a Section 1983 claim. *Marx v. Gumbinner* (C.A.11, 1990), 905 F.2d 1503, 1505.

The United States Supreme Court has defined "probable cause" for purposes of the Fourth Amendment in terms substantially similar to those employed by the Ohio Supreme Court to define "probable cause" for purposes of a malicious prosecution claim, requiring "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed,

is committing, or is about to commit an offense." *Michigan v. DeFillippo* (1979), 443 U.S. 31, 37, 99 S.Ct. 2627, 2632, 61 L.Ed.2d 343, 349–350.

As we determined above, the testimony presented in the trial court raises a factual issue as to whether Officer Smith arrested and detained appellant without probable cause, and whether Detective Schrader continued the prosecution against appellant without probable cause. Thus, there remains an issue of fact as to whether appellant was deprived of a right secured by the United States Constitution by effectuating an arrest and detention of appellant in contravention of the Fourth Amendment requirement that a pretrial detention be based on probable cause.

Accordingly, appellant's assignment of error with respect to appellees Smith and Schrader in their personal capacities is sustained. Again, this court notes that we do not express any view as to the ultimate merits of this controversy, but only hold that appellant has set forth evidence of a Section 1983, Title 42, U.S.Code violation against defendants Smith and Schrader in their personal capacities, sufficient to overcome a motion for directed verdict.

In order to establish personal liability on the part of a government official in a federal civil rights action under Section 1983, Title 42, U.S.Code, it is enough to show that the official, acting under color of state law, caused deprivation of a federal right. *Kentucky v. Graham* (1985), 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114. However, a governmental entity is liable in an official capacity under Section 1983 only when the entity is the moving force behind the deprivation, thus requiring the entity's policy or custom to have played a part in the violation of federal law. *Id.*

With respect to appellant's claims against Officer Smith and Detective Schrader in their official capacity, and against the city of Columbus, the trial court correctly noted that suing the officers in their official capacity is the same as suing the city of Columbus. *Kentucky, supra.* Therefore, in order to prevail on this claim, appellant must show that the city of Columbus has a policy or custom which operates to deprive appellant of his constitutional rights. *Monell v. New York City Dept. of Social Serv.* (1978), 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611. Thus, the city of Columbus will not be held liable under Section 1983 for the acts of its employees, absent evidence that the officers were executing an official city policy that directly caused appellant injury. *Id.*

The purpose of the policy/custom requirement is to distinguish acts of a municipality from acts of its employees, as a municipality is only liable for actions in which the municipality is actually responsible. *Miller v. Leesburg* (1993), 87 Ohio App.3d 171, 177, 621 N.E.2d 1337, 1341, citing *Pembaur v. Cincinnati* (1986), 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452. It is the

execution of the government's policy, either by its policymakers or by those whose acts may fairly be said to represent official policy which gives rise to municipal liability under Section 1983.

A policy exists where a deliberate choice to follow a course of action is made from among various alternatives by officials responsible for establishing final policy with respect to a subject matter in question. *Pembaur, supra.* Official policy need not always be committed to writing, so long as it establishes a fixed plan of action to be followed under similar circumstances consistently and over time, and is properly made by the government's authorized decisionmakers. *Id.,* 475 U.S. at 480, 106 S.Ct. at 1298–1299, 89 L.Ed.2d at 463.

In *Dominguez v. Beame* (C.A.2, 1979), 603 F.2d 337, the court held that a woman suspected of being a prostitute may not maintain a suit against the city police department where evidence in the case established that the policy of the department was to arrest only those women actually observed engaging in activities which the police, in good faith, believed to constitute an offense and there was no departmental policy to arrest women on the basis of their status or to arrest them in the absence of probable cause. The fact that the police officers actually did arrest plaintiff without probable cause is a matter to be considered in connection with the officers' individual liability for the arrest, not in connection with the department's liability. In the present case, appellant has not set forth any evidence that indicates that the police department has or had a policy of arresting burglary suspects without probable cause.

Appellant argues that a single incident or decision may give rise to liability under Section 1983 and cites *Pembaur, supra,* in support. In *Pembaur,* the petitioner, a physician and the proprietor of a clinic in Cincinnati, Ohio, that provided medical services primarily to welfare recipients, was indicted by a grand jury for fraudulently accepting payments from state welfare agencies. During the grand jury investigation, subpoenas were issued for the appearance of two of petitioner's employees. When the employees failed to appear, the assistant city prosecutor obtained capiases for their detention. When the deputy sheriffs attempted to serve the capiases at petitioner's clinic, petitioner barred the door and refused to let them enter. Cincinnati police officers arrived and told petitioner to allow the deputy sheriffs to enter. Petitioner refused. The deputy sheriffs then called their superior who told them to call the county prosecutor's office and to follow his instructions. The deputy sheriffs spoke to the assistant prosecutor assigned to the case. He, in turn, conferred with the county prosecutor, who told him to instruct the deputy sheriffs to "go in and get" the employees. After trying unsuccessfully to force the door, the city police officers obtained an axe and chopped down the door. The deputy sheriffs then entered and searched the clinic but were unable to locate the employees sought. Although petitioner

was acquitted of the fraud charges, he was indicted and convicted for obstructing police in the performance of an authorized act. His conviction was upheld by the Ohio Supreme Court. *State v. Pembaur* (1984), 9 Ohio St.3d 136, 9 OBR 385, 459 N.E.2d 217. Petitioner filed a damages action in federal district court under Section 1983 alleging that the county had violated his rights under the Fourth and Fourteenth Amendments to the United States Constitution. The district court dismissed the claim against the county on the ground that the individual officers were not acting pursuant to the kind of "official policy" that is the predicate for municipal liability under *Monell, supra.* The circuit court affirmed, holding that petitioner had failed to prove the existence of a county policy because he had shown nothing more than that on "this one occasion" the prosecutor and the sheriff decided to force entry into petitioner's clinic. The United States Supreme Court reversed and remanded the case. The court held that in appropriate circumstances, a municipality may be held liable for a single decision by municipal policymakers.

The distinction here is that Officer Smith and Detective Schrader are not municipal policymakers. They are not vested with final authority. See *Pembaur*, 475 U.S. at 478, 106 S.Ct. at 1297–1298, 89 L.Ed.2d at 461–462. Appellant has presented no evidence to indicate that either Officer Smith or Detective Schrader were vested with final authority at the time of the arrest. Neither has appellant offered any evidence to suggest that the policy of the department was to arrest burglary suspects without probable cause. Therefore, appellant's second assignment of error with respect to appellees Officer Smith and Detective Schrader in their official capacities, and the city of Columbus, is overruled.

By his third assignment of error, appellant contends that the trial court erred in directing a verdict in favor of defendant Molly Smith on the claim of false arrest. However, the record indicates that appellee Smith was granted summary judgment on the false arrest claim. Appellant suggests that since the summary judgment was merely interlocutory until the trial court disposed of the other claims in the case, this court should treat the August 12, 1994 final judgment as directing a verdict on all claims, including the false arrest claim, even though this claim was not specifically addressed at trial due to the earlier ruling. This court disagrees. As the false arrest claim was dismissed via summary judgment, this court will review appellant's third assignment of error in the context of a summary judgment pursuant to Civ.R. 56.

The standard for summary judgment is well settled. Civ.R. 56 provides that the evidence must be construed most strongly in favor of the nonmoving party. Summary judgment should be granted only if no genuine issue of material facts exist, the moving party is entitled to judgment as a matter of law, and reasonable minds can come to but one conclusion, which is adverse to the

nonmoving party. *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 8 O.O.3d 73, 375 N.E.2d 46. A motion for summary judgment forces the nonmoving party to produce evidence on any issue for which the party bears the burden of production at trial. *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095, paragraph three of the syllabus, citing *Celotex Corp. v. Catrett* (1986), 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265.

The central issue in the third assignment of error is whether the trial court erred in granting summary judgment in favor of appellee Molly Smith on the false arrest claim. The trial court found that appellant's false arrest claim was barred by the statute of limitations, and granted summary judgment on this issue in favor of all defendants.

R.C. 2305.11 provides in pertinent part:

"(A) An action for libel, slander, malicious prosecution, or false imprisonment * * * shall be commenced within one year after the cause of action accrued. * * * "

"False arrest" includes false imprisonment; therefore, the one-year statute of limitations provided in the above-referenced statute applies. *Rogers v. Barbera* (1960), 170 Ohio St. 241, 10 O.O.2d 248, 164 N.E.2d 162; *Alter v. Paul* (1955), 101 Ohio App. 139, 1 O.O.2d 80, 135 N.E.2d 73. See, also, *Haller v. Borror* (June 14, 1994), Franklin App. No. 93APE12–1657, unreported, 1994 WL 265660.

In the case at bar, appellant was arrested on May 5, 1991. Therefore, he had one year from May 5, 1991 to bring his cause of action. However, appellant did not file his action until July 17, 1992. Appellant argues that the false arrest cause of action did not accrue, and the statute of limitations did not begin to run until July 22, 1991, the date appellant was acquitted and released from jail. Contrary to appellant's argument, this court found in *Haller, supra*, that appellant's false arrest claims were not linked to the outcome of the criminal proceedings against appellant, and rejected appellant's argument that those actions did not accrue until the *nolle prosequi* which took place thereafter.

Likewise, we find that appellant's cause of action for false arrest began to accrue on May 5, 1991, the date of the incident. Accordingly, appellant had until May 1992 to bring his false arrest claim. As appellant failed to bring his cause of action within the statutory time frame provided by law, the trial court correctly granted summary judgment in favor of appellee Molly Smith on this claim. Therefore, appellant's third assignment of error is also overruled.

Based on the foregoing, appellant's first assignment of error is sustained, appellant's second assignment of error is sustained in part and overruled in part,

and appellant's third assignment of error is overruled. The judgment of the Franklin County Court of Common Pleas is reversed and the cause is remanded.

*Judgment reversed*
*and cause remanded.*

PEGGY BRYANT and DESHLER, JJ., concur.

DEAN STRAUSBAUGH, J., retired, of the Tenth Appellate District, sitting by assignment.