**TUCKER, Appellant,**

v.

**KROGER COMPANY et al., Appellees.**

[Cite as *Tucker v. Kroger Co.* (1999), 133 Ohio App.3d 140.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 98AP–1383.

Decided Sept. 9, 1999.

*James D. McNamara,* for appellant.

*Lane, Alton & Horst, Jeffrey W. Hutson* and *John D. Studenmund,* for appellees Kroger Company and Scott Marcum.

*Isaac, Brant, Ledman & Teetor, Michael R. Szolosi* and *David W. Orlandini,* for appellees Wackenhut Security Corporation and Matt Emmitt.

---

BOWMAN, Judge.

On September 3, 1995, plaintiff-appellant, Dennis Tucker, entered the Kroger store at Hamilton and Refugee Roads at approximately 12:20 a.m. to purchase Advil for his girlfriend. Tucker testified that he compared prices on two bottles of Advil and then decided not to purchase any because the price was too high. He placed the boxes back on the shelf and walked to the bottled water aisle. The brand he wanted was not in stock so he started to leave the store. As he approached the exit, Matthew Emmitt, a security guard employed by Wackenhut Security Corporation ("Wackenhut"), stopped him and asked him to go upstairs. Tucker told him he had to use the restroom and turned away from him. Emmitt then grabbed Tucker's arm and placed it in a transport wrist lock. An employee in the loss prevention department of Kroger, Scott Dean Marcum, then approached and asked Tucker to go upstairs. The three went upstairs. Tucker testified that, while walking up the stairs, he lost his balance and Emmitt nudged him with his shoulder. When the three entered the office upstairs, Tucker testified that Emmitt told him to place his hands on the wall and he complied. Then Emmitt attempted to handcuff Tucker but Tucker thought Emmitt was again attempting to place his wrist in a transport wrist lock and Tucker "tightened up" and became stiff to prevent that. A struggle followed and Tucker was thrown over a desk and his arm pulled in order to handcuff him. Several stock employees entered the office to help control Tucker. Tucker then again requested to use the restroom. He was led through the store to the restroom while handcuffed. He requested that he not be handcuffed behind his back because his right elbow had been injured in the struggle and he was then handcuffed in front. The police and an ambulance were called. The police arrived and no Advil was found. The paramedics suggested that Tucker have x-rays performed, and Tucker went to the hospital after leaving Kroger.

Marcum testified that he was on a catwalk approximately twelve to thirteen feet above the shopping floor behind a one-way mirror. He saw Tucker pick up the Advil and walk away from Marcum. Tucker moved his arm and Marcum

thought he had hid the Advil in his pants. Marcum proceeded to go to the front of the store, asked Emmitt to stop Tucker, and then started to look for Tucker in the store. By the time Marcum returned to the front of the store, Emmitt had stopped Tucker and had his arm in a transport wrist lock. Marcum testified that he showed Tucker his Kroger badge and asked him to go upstairs to discuss the Advil. The three then proceeded upstairs. Marcum's testimony does not differ much from Tucker's after that point.

Emmitt also testified. He stated that he was employed by Wackenhut and worked in the Kroger store every Friday and Saturday for approximately six months before this incident. Marcum told him that Tucker had concealed Advil and asked him to stop Tucker. When he asked Tucker to go upstairs, Tucker replied "no problem" but that he needed to use the restroom. Emmitt responded that they needed to speak upstairs first. Tucker turned away and Emmitt grabbed his arm and placed it in a transport wrist lock. Marcum then arrived and the three proceeded upstairs. While on the stairs, Tucker stiffened and refused to go upstairs. Emmitt nudged Tucker with his shoulder. When they entered the office, Emmitt asked Tucker to place his hands on the wall and attempted to pat him down when Tucker tried to elbow Emmitt in the face. Emmitt tried to grab Tucker's arm to put him on the ground to gain control and to handcuff him. A struggle ensued in which Tucker was put over the desk and eventually he was handcuffed. Emmitt said that Tucker complained of pain shortly thereafter and that he then called the police and the paramedics.

Tucker filed an amended complaint against the Kroger Company ("Kroger"), Marcum, Emmitt, and Wackenhut for assault and battery, false arrest, false imprisonment, negligent and intentional infliction of severe emotional injury, and sought $500,000 in compensatory damages, $500,000 in punitive damages and reasonable attorney fees and costs.[1]

Kroger and Marcum filed a cross-claim against Wackenhut and Emmitt, contending that any alleged negligence of Kroger and Marcum was secondary and passive to the negligence of Wackenhut and Emmitt. The cross-claim was later voluntarily dismissed.

At the close of Tucker's evidence, the trial court granted motions for directed verdicts as to the remaining claims of false imprisonment, false arrest, and assault and battery made against Marcum, Kroger, and Wackenhut.[2]

---

**1.** Although there is no journal entry in the record, there are references in the record that Tucker voluntarily dismissed his claims for negligent and intentional infliction of severe emotional injury.

**2.** There is no evidence in the record, but appellant's brief states that the trial continued as to Tucker's claims for false imprisonment, false arrest, and assault and battery as to Emmitt, but

Tucker appealed from the orders granting the directed verdicts and raises the following assignments of error:

1. *First Assignment of Error*

"The trial court erred to the prejudice of the plaintiff by awarding a directed verdict in favor of defendant Dean Marcum when there existed ample evidence in the record from which a jury could find in favor of Dennis Tucker on his claims against Mr. Marcum."

2. *Second Assignment of Error*

"The trial court erred to the prejudice of the plaintiff by awarding a directed verdict in favor of defendant the Kroger Company when there existed ample evidence in the record from which a jury could find in favor of Dennis Tucker on his claims against the Kroger Company."

3. *Third Assignment of Error*

"The trial court erred to the prejudice of the plaintiff by awarding a directed verdict in favor of defendant Wackenhut Security Corp. when there existed ample evidence in the record from which a jury could find in favor of Dennis Tucker on his claims against Wackenhut Security Corp."

In all three assignments of error, Tucker contends that the trial court erred in granting the directed verdict motions. The standard to be applied by a trial court in considering a motion for directed verdict is provided in Civ.R. 50(A)(4), as follows:

*"When granted on the evidence.* When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue."

 Generally, a directed verdict is appropriate only where the party opposing the motion fails to adduce any evidence on the essential elements of his claim or defense. *O'Day v. Webb* (1972), 29 Ohio St.2d 215, 58 O.O.2d 424, 280 N.E.2d 896. The test requires the trial court to look at the sufficiency of the evidence on each element of a claim, and "the court must neither consider the weight of the evidence nor the credibility of the witnesses." *Strother v. Hutchinson* (1981), 67 Ohio St.2d 282, 284, 21 O.O.3d 177, 179, 423 N.E.2d 467, 469, citing

---

the jury could not reach a verdict and the trial court declared a mistrial. The trial court decided to reschedule a new trial after this appeal.

*Durham v. Warner Elevator Mfg. Co.* (1956), 166 Ohio St. 31, 1 O.O.2d 181, 139 N.E.2d 10. Thus, the issue presented is one of law as opposed to a question of fact. *Ruta v. Breckenridge–Remy Co.* (1982), 69 Ohio St.2d 66, 23 O.O.3d 115, 430 N.E.2d 935, paragraph one of the syllabus. The trial court must determine whether there is substantial competent evidence to support the party against whom the motion is made, and whether that evidence is such that reasonable minds could reach different conclusions. *Strother,* 67 Ohio St.2d at 284–285, 21 O.O.3d at 179, 423 N.E.2d at 469.

■■■ Tucker contends that the directed verdicts in favor of Marcum as to the false imprisonment and false arrest claims were incorrect; however, he has not raised the issue of the directed verdict as to his claims for assault and battery as to Marcum. An action for " '[f]alse arrest' includes false imprisonment." *Mayes v. Columbus* (1995), 105 Ohio App.3d 728, 746, 664 N.E.2d 1340, 1352. This court has stated that "[f]alse arrest and false imprisonment are related actions, both subject to the same statute of limitations." *Haller v. Borror* (June 14, 1994), Franklin App. No. 93APE12–1657, unreported, 1994 WL 265660. See, also, *Alter v. Paul* (1955), 101 Ohio App. 139, 1 O.O.2d 80, 135 N.E.2d 73. A claim for false imprisonment requires Tucker to demonstrate that he was intentionally confined " ' "without lawful privilege and against his consent within a limited area for any appreciable time, however short." ' " *Bennett v. Ohio Dept. of Rehab. & Corr.* (1991), 60 Ohio St.3d 107, 109, 573 N.E.2d 633, 636. See, also, *Mullins v. Rinks, Inc.* (1971), 27 Ohio App.2d 45, 48, 56 O.O.2d 218, 220, 272 N.E.2d 152, 154. In *Harvey v. Horn* (1986), 33 Ohio App.3d 24, 27, 514 N.E.2d 452, 454, this court stated:

■■■ "The essence of the tort of false arrest is the depriving of a person of his or her liberty without lawful justification. Specifically, a plaintiff must show only that he or she was detained and that the detention was unlawful. The tort does not require proof of malice, motive or lack of probable cause."

Further, R.C. 2935.041 provides:

"(A) A merchant, or his employee or agent, who has probable cause to believe that items offered for sale by a mercantile establishment have been unlawfully taken by a person, may, for the purposes set forth in division (C) of this section, detain the person in a reasonable manner for a reasonable length of time within the mercantile establishment or its immediate vicinity.

" * * *

"(D) The officer, agent, or employee of the library, museum, or archival institution, or the merchant or his employee or agent acting under division (A) or (B) of this section shall not search the person, search or seize any property

belonging to the person detained without the person's consent, or use undue restraint upon the person detained."

■ This section permits merchants to detain a person for a reasonable length of time in a reasonable manner if the merchant has probable cause to believe that the person has unlawfully taken an item. "The unlawfulness of a detention in a false imprisonment case has been equated with the reasonableness of the detention. * * * ' "The question as to what constitutes *an unreasonable detention* is one for the jury to determine under the facts and circumstances of each particular case." ' " (Emphasis *sic.*) *Gates v. Kroger* (Apr. 30, 1991), Franklin App. No. 90AP–837, unreported, 1991 WL 70139, quoting *Garland v. Dustman* (1969), 19 Ohio App.2d 292, 299, 48 O.O.2d 408, 412, 251 N.E.2d 153, 157.

■ In this case, there is substantial competent evidence to support Tucker's claims if such evidence is believed. Tucker testified that he returned the Advil to the shelf. Both Marcum and Emmitt testified that Marcum asked Emmitt to detain Tucker. After Emmitt detained him, Marcum approached and displayed his Kroger badge and asked to speak with Tucker upstairs. Tucker, Marcum, and Emmitt then went upstairs, and Tucker and Emmitt struggled and Tucker's arm was injured. When the police arrived, Tucker was searched and no Advil was found. While Marcum admitted that Tucker had his back to him while allegedly concealing the Advil, he also testified that he was positive he saw Tucker put the Advil in his pants. Thus, the evidence is such that reasonable minds could reach different conclusions. The trial court erred in granting Marcum's directed verdict motion.

■ Tucker's claims against both Kroger and Wackenhut are based upon the doctrine of *respondeat superior.* For an employer to be vicariously liable under the doctrine of *respondeat superior*, the tort committed by the employee must be committed within the scope of employment, and where the tort is intentional, the "behavior giving rise to the tort must be 'calculated to facilitate or promote the business for which the servant was employed.' " *Byrd v. Faber* (1991), 57 Ohio St.3d 56, 58, 565 N.E.2d 584, 587, quoting *Little Miami R.R. Co. v. Wetmore* (1869), 19 Ohio St. 110, 132, 1869 WL 35. "[A]n employer is not liable for independent self-serving acts of his employees which in no way facilitate or promote his business." *Byrd*, 57 Ohio St.3d at 59, 565 N.E.2d at 588. The issue of whether an employee is acting within the scope of his employment is a question of fact to be decided by the jury. *Osborne v. Lyles* (1992), 63 Ohio St.3d 326, 330, 587 N.E.2d 825, 829, citing *Posin v. A.B.C. Motor Court Hotel* (1976), 45 Ohio St.2d 271, 74 O.O.2d 427, 344 N.E.2d 334. The issue regarding scope of employment only becomes a question of law when reasonable minds can come to

but one conclusion. *Osborne.* In this case, the issue of scope of employment was not in question. Marcum testified that his job duties included looking for shoplifters, detaining them, and calling the police.

As to Kroger, the testimony in this case includes evidence that Marcum's actions were calculated to facilitate or promote Kroger's business. Preventing losses through shoplifting is clearly designed to facilitate or promote Kroger's business. Thus, there was testimony at trial that constituted substantial competent evidence to support Tucker's claim of false arrest or false imprisonment against Kroger. There is also evidence supporting a claim against Kroger as to Emmitt's actions. Tucker alleged that Emmitt was acting in a dual capacity as an agent of both Kroger and Wackenhut. Emmitt testified that he was an employee of Wackenhut and had been working in that particular Kroger store every Friday and Saturday night for the previous six months. Emmitt was attempting to prevent shoplifting. Thus, the trial court erred in directing a verdict as to Kroger.

The same analysis as applied to Kroger would also apply to Wackenhut (as previously noted, fn. 2, a directed verdict was not granted against Emmitt). The trial court found the following:

"Wackenhut, the corporation, the entity, the legal entity of the corporation is dismissed as distinguished from Mr. Emmitt, their agent. Because in this case, no matter what happened, again, taking the facts, viewing the facts most strongly in favor of the plaintiff, let's assume that everything Mr. Emmitt did was wrong, there's no evidence to show that that was ratified, that was proved, approved, that was in the scope of employment of Mr. Emmitt, or anything that would make the corporation liable in any way other than indemnity for their agent.

"So please understand, Mr. McNamara [counsel for plaintiff], Wackenhut may still be liable to you for the acts of their agent, Mr. Emmitt. My understanding is also that no one here is denying that, and based on the evidence I don't think they can deny it that Mr. Emmitt was here or was on this property in the course of his employment for Wackenhut, et cetera, et cetera."

The trial court applied the incorrect standard. If the trial court found, as it apparently did, that Marcum and Emmitt were within the scope of their employment, then ratification is not an issue. Ratification is only an issue when determining whether an employee is within the scope of his employment. The trial court erred in granting Wackenhut's motion for a directed verdict as to the false imprisonment and false arrest claim.

The trial court also erred in granting the directed verdict motions of Kroger and Wackenhut as to Tucker's claims for assault and battery. There was substantial competent evidence upon which reasonable minds could reach differ-

ent conclusions. Tucker testified that, during the struggle inside the office, his elbow was injured. Emmitt testified that the force he used was necessary, while Tucker claimed that it was not. Whether these facts constitute assault and battery, or whether Emmitt used greater force than was necessary under the circumstances, are questions for the jury. "This is especially true where * * * whether some force was necessary * * * is disputed by the parties." *Gates v. Kroger Co.* Thus, the trial court erred in granting the directed verdict motions of Kroger and Wackenhut as to Tucker's claims for assault and battery.

In this case, Wackenhut has conceded that the trial court erred and urges that this court's ruling in *Simms v. Kroger Co., Inc.* (Feb. 29, 1996), Franklin App. No. 95APE08–1056, unreported, 1996 WL 87465, should be overruled. While *Simms* may be unclear, and the trial court's reliance upon it incorrect, *Simms* correctly states the law given the particular facts of that case.

*Simms* involved a situation where three shoppers were accused by Kroger of shoplifting. The shoppers filed an action claiming false arrest, false imprisonment, assault and battery, and intentional and negligent infliction of emotional distress. In the sixth assignment of error in *Simms*, the appellants claimed that the trial court had erred in granting the directed verdict motion of Kroger as to all of their claims. This court affirmed the trial court.

Unlike this case, however, the issue involved in *Simms* was whether the employees were within the scope of their employment with Kroger. *Simms* did not require evidence of an employer's policy as to security procedures or training as the trial court found, here, but, rather, suggested such evidence would be relevant to determine whether an employee was in the course and scope of employment. In *Simms*, this court also found no evidence of ratification, which was not relevant to the facts of this case as there is no issue as to scope of employment. The trial court's reliance on *Simms* was incorrect because the issue in *Simms* was whether the employees were within the scope of their employment with Kroger. *Simms* is distinguishable from these facts. Thus, appellant's three assignments of error are well taken.

For the foregoing reasons, appellant's three assignments of error are sustained, and the judgment of the Franklin County Court of Common Pleas is reversed and this cause is remanded to that court for further proceedings in accordance with law and consistent with this decision.

*Judgment reversed*
*and cause remanded.*

BROWN and KENNEDY, JJ., concur.