**The STATE of Ohio**

v.

**LEE.**

Hamilton County Municipal Court.

No. C95CRB8966.

Decided July 7, 1995.

*Joseph T. Deters,* Hamilton County Prosecuting Attorney, and *Melissa A. Powers,* Assistant Prosecuting Attorney, for the plaintiff.

*Winnie L. King* and *Edward C. Perry,* Hamilton County Assistant Public Defenders, for the defendant.

---

Timothy S. Black, Judge.

This case came on for trial to the court upon the state's complaint that on March 20, 1995, defendant Jerry Lee committed the crime of domestic violence in derogation of R.C. 2919.25(A).[1] In keeping with the new policy of the Hamilton County Prosecuting Attorney the state proceeded to trial without the presence of the alleged victim.

The only evidence offered by the state at trial was a tape recording of the victim's telephone call to 911 [2] and the testimony of one of the two police officers responding to the scene.[3]

---

1. R.C. 2919.25(A) provides that "[n]o person shall knowingly cause or attempt to cause physical harm to a family or household member."

2. The tape of the 911 call records, *inter alia,* the following:

 "Can you get the police over to 666 Fairborn Road? * * * My husband's here acting up. * * * He had a knife and he stabbed my door. * * * [Q.] Are you injured? [A.] No. * * *. [Q.] Is he still there armed with the knife? [A.] No, he put the knife down, but he's throwing all my clothes out of the closet and he tried to throw me out the door. * * * [Q.] You said you had not been injured? [A.] Well he did hit me. * * *"

 A male, answering to "Jerry," can be heard in the background screaming and yelling, among other things, "Why don't you give them the name of your boyfriend too, who you've been fucking all goddamn afternoon. * * * And we're still married too. * * * I don't have no knife. * * * I had a knife because * * * [unintelligible]."

3. Police Officer Robert Schwaeble of the Forest Park Police Department was the only person to testify at trial, as follows:

 On March 20, 1995, at 1:28 a.m., Officer Schwaeble received a dispatch order relating to "domestic trouble—man armed with knife" at 666 Fairborn, the Hamilton County Communications Center having just received a 911 call for help. Officer Schwaeble and his partner, Officer Wood, responded to the scene two minutes later. As they approached the door, Officer Schwaeble could hear two voices inside: a "loud and hostile" male voice and a "scared" female voice. The officers drew their guns and knocked at the door. At that time, a young male, perhaps eighteen years old, came running around the house "at full tilt," was ordered by the police (with raised guns) to halt and show his hands, which he did, exclaiming, "I think my father is killing my mother." The officers thereupon entered the residence and found a man and a woman engaged in turbulent behavior. The officers separated the two, with

Over objection of defense counsel, the court admitted the 911 tape into evidence, and the state rested upon it and the police officer's testimony.

██ Defendant's counsel moved for acquittal pursuant to Crim.R. 29, which motion the court denied.[4] Defendant then rested without presenting testimony, arguing strenuously that without the presence of the victim at trial, the state could not present admissible evidence sufficient to convict the defendant, as there was no proof of the family relationship or of any physical harm.

The court, having heard the evidence, took the matter under consideration for decision and conditioned bond upon the defendant's not having any contact with the victim.

Upon review, the court finds that the proof as adduced here reflects a textbook case of prosecuting the crime of domestic violence without the presence of the victim at trial.

## I. PROSECUTING DOMESTIC VIOLENCE WITHOUT THE PRESENCE OF THE VICTIM AT TRIAL.

██ In many jurisdictions across the country, the state is going forward with domestic violence cases even if the alleged victim fails to appear to testify at trial. No rule of law requires that a battered partner testify against a once loved one for the state to proceed on a charge of domestic violence. Murder cases obviously go forward without the testimony of the victim—because s/he's dead. Thus, if domestic violence cases are properly investigated and prepared for trial, the victim's presence at trial may not be required. Sometimes, all that is

---

Officer Schwaeble taking the woman to another room, whereupon she identified herself as Kathy Lee and as the person who had called 911. Officer Schwaeble described her as "visibly and extremely upset, shaking, with a trembling voice." She told the officer that the man "tried to stab me." Although she bore no visible injuries, she showed the officer six knife marks in the bedroom door, which he described as "noticeably fresh slits." Ms. Lee also showed the police officer a six-inch slash in the bedroom mattress, which mark the officer described as "a cut consistent with a knife." No knife was in sight or within proximity to the defendant, although a knife was ultimately recovered from a kitchen drawer, which knife the woman identified as the one wielded by the man. The officer testified that the knife was found in "an ordinary place, in a drawer with other forks." Ms. Lee told Officer Schwaeble that "we're married but he doesn't live here now." Defendant made no statements to Officer Schwaeble, as his partner conducted that interview. Based on the evidence presented at the scene, the police arrested Mr. Lee and charged him with domestic violence upon a complaint signed by the police officer.

4. A motion for acquittal may be granted only where the evidence is insufficient to sustain a conviction and, in that context, the trial court is required to construe the evidence most strongly in favor of the state. *State v. Fyffe* (1990), 67 Ohio App.3d 608, 613, 588 N.E.2d 137, 140; *State v. Apanovitch* (1987), 33 Ohio St.3d 19, 23, 514 N.E.2d 394, 399.

necessary is the testimony of a responding officer[5] and a transcript of the 911 tape.[6]

### (A) The 911 Tape

■ A transcript of a call to 911 often records statements by the victim given under circumstances that may permit those statements to be admitted into evidence at trial. See Evid.R. 803(2). The 911 tape may well also contain admissible statements by the accused. See Evid.R. 801(D)(1). Whether or not the entire 911 tape is admissible as a business record,[7] the recorded statements of the victim and the accused are very likely admissible at trial, regardless of whether the victim or the accused testifies at trial.[8]

### (B) Excited Utterances

■ An oral statement made by a person not present at trial, even though it is hearsay, may be admissible for the truth of the matter stated if it is an excited utterance pursuant to Evid.R. 803(2).

■ To qualify as an admissible, excited utterance, a hearsay statement must satisfy four requirements:

(1) There must have been some occurrence startling enough to produce a nervous excitement in the declarant, which was sufficient to still his reflective faculties and thereby make his statements the spontaneous, unreflective and sincere expression of his actual impressions and beliefs;

---

5. Under Ohio's new domestic violence law, the police officer is now most often the person who signs the criminal complaint and becomes the complaining witness. Given that the officer testifies at trial, the defendant's fundamental right to confront the witness against him is preserved. See Sixth Amendment to the United States Constitution; see, also, Section 10, Article I, Ohio Constitution.

6. The admission into evidence of the victim's prior statements, even if she does not testify at trial, does not violate the defendant's constitutional right to confront the witnesses against him because the victim's statements, as excited utterances, bear the requisite "indicia of reliability." *Ohio v. Roberts* (1980), 448 U.S. 56, 65, 100 S.Ct. 2531, 2539, 65 L.Ed.2d 597, 608; *Dutton v. Evans* (1970), 400 U.S. 74, 88–89, 91 S.Ct. 210, 219–220, 27 L.Ed.2d 213, 226–227; see, also, *infra*, at Section I(B).

7. See, generally, Weissenberger, Ohio Evidence (1992), Section 803.81, at 810–815; see, also, *State v. Spikes* (1981), 67 Ohio St.2d 405, 21 O.O.3d 254, 423 N.E.2d 1122.

8. The declarant's availability is not an issue. *United States v. Inadi* (1986), 475 U.S. 387, 106 S.Ct. 1121, 89 L.Ed.2d 390; see, also, Evid.R. 801(D)(2) (admission by party is not hearsay) and 803 ("Hearsay Exceptions: Availability of Declarant Immaterial * * * (2) Excited Utterance"); see *infra* at Sections I(B)(1), (2), (3), and (4), (C)(1) and (2), and Part II.

(2) The statement, even if not strictly contemporaneous with its exciting cause, must have been made before there had been time for such nervous excitement to lose a domination over his reflective faculties, so that such domination continued to remain sufficient to make his statements the unreflective and sincere expressions of his actual impressions and beliefs;

(3) The statement must have related to such startling occurrence or the circumstances of such startling occurrence; and

(4) The declarant must have had an opportunity to observe personally the matters asserted in his statement or declaration. *Potter v. Baker* (1955), 162 Ohio St. 488, 55 O.O. 389, 124 N.E.2d 140, paragraph two of the syllabus; *State v. Taylor* (1993), 66 Ohio St.3d 295, 300–301, 612 N.E.2d 316, 320–321; *State v. Justice* (1994), 92 Ohio App.3d 740, 637 N.E.2d 85.

Hearsay statements that fall within the excited utterance exception are deemed worthy of admission for two reasons: (1) the stimulus renders the declarant incapable of fabrication; and (2) the impression on the declarant's memory at the time of the statement is still fresh and intense. *State v. Taylor, supra*, quoting 1 Weissenberger, Ohio Evidence (1992), Section 803.16. In determining whether a statement was made under the stress of a startling occurrence, the statement should be analyzed in light of the particular facts and circumstances in which it was made. *State v. Duncan* (1978), 53 Ohio St.2d 215, 219–220, 7 O.O.3d 380, 382–383, 373 N.E.2d 1234, 1236–1237.

Here, the state seeks to introduce four separate sets of excited utterances, to wit: (1) the statement of the younger male that "I think my father is killing my mother"; (2) the victim's statements on the 911 tape, including "he stabbed my door," "he tried to throw me out the door," and "he did hit me"; (3) the defendant's statements on the 911 tape, including "I had a knife because [unintelligible]"; and (4) the victim's statements at the scene, including "he tried to stab me."

### (1) The Son's Statement

The son's statement was made under highly charged circumstances, including his running full tilt, smack into the range of two police officers with guns drawn, and then blurting out his statement. The son was obviously agitated. The factual circumstances here are as indicative of an excited utterance as any. The son's statement is admissible as an excited utterance.

### (2) The Woman's Statements on the 911 Tape

Ms. Lee's fear and emotion at the time of her call to 911 is palpable on the tape. She is obviously agitated, upset, and scared. Her statements reflect

all of the indicia of excited utterances. Her statements on the 911 tape are admissible as excited utterances.

### (3) The Defendant's Statements on the 911 Tape

The defendant's statements are not hearsay and come into evidence as admissions by a party. Evid.R. 801(D) expressly defines "statements which are not hearsay" as including any admission by a party. Because the defendant's statements are not hearsay, they do not need to qualify as an excited utterance exception to the hearsay rule. They are admissible in the first instance as admissions.

### (4) The Victim's Statements at the Scene

The police officers arrived at the scene two minutes after the dispatch. Police Officer Schwaeble took Ms. Lee's statement within five minutes of her 911 call. She was visibly and extremely upset. Her statements continued to reflect the indicia of excited utterances. Accordingly, her statements to the officer at the scene are also admissible as excited utterances. As they are further removed in time from the startling event than the statements on the 911 call, the later statements are slightly less probative.

### *(C) The Police Officer's Testimony*

The mere fact that a police officer does not witness the initial turbulence that results in the authorities' being summoned to the scene does not preclude the officer from possessing and/or assembling admissible, probative evidence of criminal conduct.

### (1) Statements of the Participants

The police officer becomes the means through which excited utterances made in his presence are admitted at trial. The police officer can also offer probative evidence beyond the parties' statements, if the officer assumes that the victim will not be present at trial and takes photographs, seizes physical evidence, and testifies as to what he observed at the scene. Here, Police Officer Schwaeble did just that (although he forgot to bring the photographs to trial).

### (2) Physical Evidence of Struggle

Here, the police officer testified as to the presence of indications that a physical struggle had taken place. Sticky soda pop was spilled about, Ms. Lee's hair was wet (consistent with her statement that pop had been thrown at her), and the door and bedroom mattress reflected stab marks. This physical evidence of turbulent behavior is probative.

Thus, together, the 911 tape and the testimony of the responding officer reflect probative, comprehensive, and compelling evidence of criminal conduct.

## II. PROOF OF DOMESTIC VIOLENCE: LEGAL STANDARDS

### (A) Proof of Turbulent Behavior: Disorderly Conduct

When a defendant is charged with domestic violence and trial is had, the least serious criminal offense for which defendant can be convicted is minor misdemeanor disorderly conduct. See R.C. 2917.11(A). A defendant tried upon a charge of domestic violence can be adjudicated guilty of disorderly conduct under appropriate circumstances because minor misdemeanor disorderly conduct is a lesser included offense of domestic violence.[9]

R.C. 2917.11(A)(1) prohibits any person from "recklessly caus[ing] inconvenience, annoyance, or alarm to another, by * * * [e]ngaging in fighting, in threatening harm to persons or property, or in violent or turbulent behavior." Webster's defines "turbulent" as "causing unrest, violence, or disturbance[;] characterized by agitation or tumult." Webster's New Collegiate Dictionary (1975) 1260; see, also, *State v. Reeder* (1985), 18 Ohio St.3d 25, 18 OBR 21, 479 N.E.2d 280.

Here, at the very least, the court could find Mr. Lee guilty of the lesser included offense of engaging in disorderly conduct. His own screaming and yelling as recorded on the 911 tape conclusively establishes his criminal conduct of "turbulent behavior."

### (B) Proof of Marital Relationship

To prove domestic violence, of course, the state must prove that element of the crime which establishes the victim's status as a "family or household member."[10] When the victim is not present to testify at trial, proof of this fundamental element is potentially challenging.

---

9. *State v. Stuber* (1990), 71 Ohio App.3d 86, 88–90, 593 N.E.2d 48, 50–51; *State v. Reynolds* (1985), 25 Ohio App.3d 59, 60–61, 25 OBR 227, 228–229, 495 N.E.2d 971, 972; *State v. Roberts* (1982), 7 Ohio App.3d 253, 7 OBR 333, 455 N.E.2d 508.

10. "Family or household member" is defined in R.C. 2919.25(E)(1)(a) as including:
 "(a) Any of the following who is residing or has resided with the offender:
 "(i) A spouse, a person living as a spouse, or a former spouse of the offender;
 "(ii) A parent or a child of the offender, or another person related by consanguinity or affinity to the offender;
 "(iii) A parent or a child of the spouse, person living as a spouse, or former spouse of the offender, or another person related by consanguinity or affinity to a spouse, person living as a spouse, or former spouse of the offender."

Here, proof of the required family relationship is established by the following: (1) the younger male's statement that "I think my father is killing my mother" [11]; (2) the *defendant's* statement on the 911 tape that we're "still married too"; (3) the victim's statement on the 911 tape that "he's my husband"; and (4) the victim's statement to the officer at the scene that "we're married, but he doesn't live here now."

### (C) Proof of Domestic Violence: Threat

R.C. 2919.25(C) provides that "[n]o person, by threat of force, shall knowingly cause a family or household member to believe that the offender will cause imminent physical harm to the family or household member." This portion of the domestic violence statute is akin to menacing.

Although domestic violence by threat of force is a less serious charge than domestic violence by assault, the former is not a lesser included offense of the latter. This is because one does not always have to engage in threatening domestic violence to commit assaultive domestic violence. One can assault without having menaced. Accordingly, a defendant charged with domestic violence assault cannot be found guilty of domestic violence threat as a lesser included offense. See fn. 9, *supra.*

The court, however, can amend an R.C. 2919.25(A) complaint to an R.C. 2919.25(C) complaint pursuant to Crim.R. 7(D) after trial to conform the complaint to the evidence. In doing so, however, the court must afford the defendant a continuance and an opportunity to present evidence in defense to the amended charge, if substantial justice so requires. Crim.R. 7(D).

The evidence presented here compels the conclusion that the defendant, by threat of force, knowingly caused his wife to believe that he was going to cause her imminent physical harm. Running around with a knife and stabbing the door and the bedroom mattress is conduct which would reasonably lead any person to fear imminent physical harm from the accused.

### (D) Proof of Domestic Violence: Assault

Proof of assaultive domestic violence requires proof of injury to a household or family member, or an attempt to do so.

Here, as a threshold issue, the victim states on the 911 tape: "[Q]. Are you injured? [A.] No." Moreover, at the scene, the officer found no visible signs of

---

11. The domestic violence statute, as of 1995, now further defines "family or household member" to include "the natural parent of any child of whom the offender is the other natural parent." R.C. 2919.25(E)(1)(b).

injury. The evidence does not reflect that an assault occurred, notwithstanding that "physical harm" is defined as "any injury, illness, or physiological impairment, regardless of its gravity or duration." R.C. 2901.01(C).

Accordingly, on the date set for decision, the court amended the complaint to conform to the evidence presented at trial so as to charge a violation of R.C. 2919.25(C). In careful consideration of Crim.R. 7(D), the court granted defendant a continuance of ten days to prepare and present a defense, if desired, to the amended complaint.

Upon the new date for trial as continued in progress, the defendant simply rested again.

Wherefore, upon the evidence presented, the court finds defendant guilty of domestic violence (*contra* R.C. 2919.25[C]) because he knowingly, by threat of force, caused his wife to believe that he was going to cause her imminent physical harm. Toward the primary ends of promoting the victim's safety and holding the batterer accountable, defendant is sentenced as appears of record.

*So ordered.*