Thomas W. SHEVLIN,
et al., Plaintiffs,

v.

John C. CHEATHAM, Defendant.

No. 00–CV–1038.

United States District Court,
S.D. Ohio,
Eastern Division.

May 7, 2002.

James Donald McNamara, Columbus, OH, for plaintiffs.

Timothy Joseph Mangan, Joshua T. Cox, Columbus City Attorney's Office, Columbus, OH, for defendant.

### *OPINION AND ORDER*

MARBLEY, District Judge.

### I. INTRODUCTION

This matter is before the Court on the Defendant's Motion for Partial Summary Judgment, filed on October 2, 2001. The Court held a hearing on the motion on April 24, 2002. Jurisdiction is proper pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367.

For the following reasons, the Court **GRANTS** the Defendant's Motion for Partial Summary Judgment in part, and **DENIES** the Defendant's Motion for Partial Summary Judgment in part.

### II. FACTS AND PROCEDURAL HISTORY

#### A. Uncontested Facts

On May 26, 1997, the Plaintiffs, Thomas and Amy Shevlin, brought their daughter, Chloe, to the Children's Hospital Emergency Room because she was having problems breathing. After Chloe was placed in the Pediatric Intensive Care Unit ("PICU") for the night, the Shevlins looked for a place to rest in the hospital. All of the beds in the PICU waiting room were full, but they found a place to rest in the Surgery waiting area.

Chloe's condition did not improve, so she was required to remain in the PICU on May 27, 1997. The Plaintiffs remained at the hospital throughout that day. At approximately 10:00 p.m., Mr. Shevlin began to look for a place to rest. Again, the PICU waiting room was full, but there was space in the Surgery waiting room. Mr. Shevlin told Chloe's nurse where he and his wife could be found, and then returned to the Surgery waiting room to sleep.

At approximately 2:15 a.m. on May 28, 1997, the Shevlins were awakened when Martin Gray, a hospital security guard, entered the Surgery waiting room, turned on the lights, and ordered everyone to leave. After Mr. Gray engaged in a confrontational conversation with another couple that had been sleeping in the room, Mr. Shevlin followed Mr. Gray out into the hallway. An argument ensued between Mr. Shevlin and Mr. Gray, during which Mr. Shevlin admits that he raised his voice and used profane language.

At some point during their confrontation, Mr. Gray called for assistance with Mr. Shevlin. Shortly thereafter, nursing supervisor Ann Hoffman arrived. Speaking to Ms. Hoffman, Mr. Shevlin demanded to speak with Mr. Gray's supervisor. Subsequently, the Defendant, Columbus

Police Officer John Cheatham, and security supervisor Peter Casey also arrived. At the time, Officer Cheatham, who was in uniform, was working on special duty assignment at the hospital. From this point forward in the chronology of events, the facts are in dispute.

## B. Plaintiff's Version of the Facts[1]

Mr. Shevlin asserts that the only time he raised his voice or used profanity was during his initial confrontation with Mr. Gray, which he claims was rather brief. He also states that this conversation took place in an isolated part of the hospital, far from the intensive care unit, such that no patient or staff member could be disturbed. He contends that he never used any obscenities in the presence of either Ms. Hoffman or Officer Cheatham, and never directed any profane or threatening comment or gesture toward either Mr. Gray or Officer Cheatham.

According to Mr. Shevlin, he spoke with Ms. Hoffman for some time, and then excused himself to go to the restroom. He claims that as he turned to walk toward the restroom, he found himself facing Officer Cheatham. He states that, as he turned around, Officer Cheatham said, "you are not going anywhere," or words to that effect, but the Plaintiff continued to walk toward the restroom. At that point, he asserts that Officer Cheatham grabbed him, slammed his head against the wall, pulled his left arm behind his back, and put him into handcuffs. He asserts that the Defendant then made a profane comment to him while standing extremely close to him. Mr. Shevlin contends that he was not yelling at the time that he was put into handcuffs, and claims that he in no way resisted the arrest. He states that as he was taken out of the hospital and to the police van, he remained calm and quiet.

## C. Defendant's Version of the Facts

The Defendant alleges that when he arrived to the hallway, the nursing supervisor and the security supervisor were trying to calm Mr. Shevlin. He claims that Mr. Shevlin did not respond to their requests, but continued to speak loudly, with profanity. Specifically, Officer Cheatham asserts that Mr. Shevlin directed a profane comment toward Mr. Gray, in response to which Officer Cheatham admonished Mr. Shevlin to calm down and watch his language. Then, Officer Cheatham claims that, with one fist clenched and the other hand pointing at Officer Cheatham, Mr. Shevlin stepped toward him and said, "I don't give a f**k what you have to say, either."

Officer Cheatham asserts that Mr. Shevlin had been told to stay where he was so that he would not disturb the patients in the hospital. Yet, after making the profane statement to Officer Cheatham, the Plaintiff allegedly started to walk past the hospital staff, and continued to yell and act in a disruptive manner. To stop him, Officer Cheatham says that he put his hand on Mr. Shevlin, turned him toward the wall, and handcuffed him. He asserts that, as he put on the handcuffs, Mr. Shevlin attempted to resist by pulling his arms away. Officer Cheatham then escorted Mr. Shevlin out of the hospital to a police wagon, but Mr. Shevlin continued to be loud and disruptive the entire time. Officer Cheatham put Mr. Shevlin in the police vehicle, and took him to jail. Mr. Shevlin was subsequently charged with disorderly conduct in violation of Ohio Rev.Code § 2917.11(A), which provides in pertinent part:

No person shall recklessly cause inconvenience, annoyance, or alarm to another by doing any of the following:

1. For purposes of this Motion for Partial Summary Judgment, the facts will be viewed in the light most favorable to the Plaintiff, the non-movant.

(1) Engaging in fighting, in threatening harm to persons or property, or in violent or turbulent behavior....

OHIO REV.CODE § 2917.11(A)(1). The charges against Mr. Shevlin were eventually dismissed in the Franklin County Municipal Court.

## D. Procedural History

Based on the foregoing series of events, the Plaintiffs filed a Complaint with this Court on May 27, 1998. That Complaint named Officer Cheatham, the City of Columbus, and Children's Hospital as defendants. On January 24, 2000, the Court, per Judge Sargus, granted summary judgment in favor of Children's Hospital, and dismissed Children's Hospital as a party. Subsequently, the Plaintiffs filed a motion to dismiss voluntarily all of their remaining claims without prejudice. That motion was granted on February 9, 2000.

The Plaintiffs re-filed their Complaint with this Court on September 6, 2000, naming only Officer Cheatham as a defendant. The Complaint asserts the following four causes of action: (1) a violation of 42 U.S.C. § 1983 based on an infringement of the Plaintiff's rights under the First and Fourth Amendments to the United States Constitution; (2) assault and battery; (3) false imprisonment; and (4) intentional infliction of emotional distress. The first three claims are brought on behalf of Mr. Shevlin only, while the claim for intentional infliction of emotional distress is brought on behalf of both Mr. and Mrs. Shevlin. This matter is now before the Court on the Defendant's Motion for Partial Summary Judgment. The Defendant seeks summary judgment on all of the Plaintiff's claims except for the claim that Officer Cheatham used excessive force in effectuating his arrest, in violation of the Fourth Amendment.

## III. STANDARD OF REVIEW

Summary judgment is appropriate "[i]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." FED. R.CIV.P. 56(c). The movant has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.,* 12 F.3d 1382, 1388–89 (6th Cir.1993). In response, the nonmoving party must present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.,* 8 F.3d 335, 339–40 (6th Cir.1993). "[S]ummary judgment will not lie if the dispute is about a material fact that is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (concluding that summary judgment is appropriate when the evidence could not lead the trier of fact to find for the non-moving party).

In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). In responding to a motion for summary judgment, however, the non-moving party "may not rest upon its mere allegations ... but ... must set forth spe-

cific facts showing that there is a genuine issue for trial." FED.R.CIV.P. 56(e); *see Celotex*, 477 U.S. at 324, 106 S.Ct. 2548; *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir.1994). Furthermore, the mere existence of a scintilla of evidence in support of the non-moving party's position will not be sufficient; there must be evidence on which the jury could reasonably find for the non-moving party. *Anderson*, 477 U.S. at 251, 106 S.Ct. 2505; *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir.1995).

## IV. ANALYSIS

### A. 42 U.S.C. § 1983

■ Section 1983 reads, in relevant part:

Every person who, under color of any statute, regulation, custom, or usage of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983. To state a claim for a violation of § 1983, the plaintiff must show that (1) a person (2) acting under color of law (3) deprived him of his rights secured by the United States Constitution or its laws. *Berger v. City of Mayfield Heights*, 265 F.3d 399, 405 (6th Cir.2001). Defendant Officer Cheatham concedes that he was acting under color of law at the time of this incident. Therefore, he can succeed on his motion for summary judgment only if the facts, viewed in the light most favorable to the Plaintiff, demonstrate that he did not deprive Mr. Shevlin of any of his constitutional rights.

### 1. Fourth Amendment: Probable Cause

■ The Fourth Amendment provides, in relevant part:

The right of the people to be secure in their person, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause....

U.S. CONST. amend. IV. An arrest that is not supported by probable cause violates the Fourth Amendment, and is actionable under 42 U.S.C. § 1983. *See Gardenhire v. Schubert*, 205 F.3d 303, 313 (6th Cir. 2000) (citing *Dunaway v. New York*, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979)). " 'Probable cause' denotes 'facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.' " *Painter v. Robertson*, 185 F.3d 557, 569 (6th Cir.1999) (citations omitted). The officer's belief of criminal activity must be supported by something more than mere suspicion, though less than *prima facie* proof. *United States v. Harris*, 255 F.3d 288, 292 (6th Cir.2001) (citation omitted).

Officer Cheatham asserts that he is entitled to summary judgment on Mr. Shevlin's Fourth Amendment claim because a reasonable officer would have believed that the arrest of Mr. Shevlin was lawful. He states that it is undisputed that, at least for some brief period of time, Mr. Shevlin was engaged in a loud and profane argument in the hospital, in the middle of the night, in an area adjacent to the surgical recovery room. He claims that this fact alone supports his belief that Mr. Shevlin had committed or was committing the offense of disorderly conduct. He contends,

furthermore, that Mr. Shevlin refused to comply with the requests of hospital staff to calm himself, and continued to act in a disruptive manner as he was escorted out of the hospital.

An individual violates Ohio Rev.Code § 2917.11(A)(1) if he recklessly causes inconvenience, annoyance, or alarm by "engaging in fighting, in threatening harm . . . or in violent or turbulent behavior. . . ." OHIO REV.CODE § 2917.11(A)(1). An individual engages in "turbulent" behavior when he engages in "tumultuous behavior or unruly conduct characterized by violent disturbance or commotion." *State v. Reeder,* 18 Ohio St.3d 25, 479 N.E.2d 280, 282 (1985); *see State v. Lee,* 73 Ohio Misc.2d 9, 657 N.E.2d 604, 610 (Ohio Mun.1995) (concluding that the defendant could be found guilty of disorderly conduct because the ranting and screaming tirade in which he engaged constituted turbulent conduct); *State v. Walton,* 89 Ohio App.3d 799, 627 N.E.2d 644, 646 (1993) (finding that the defendant, a process server, had engaged in turbulent behavior when he quickly and unexpectedly approached the victim, pulled her t-shirt, and stuffed papers down it, and scratched her neck and broke her necklace in the process).

■ Viewing the facts here in the light most favorable to the Plaintiff, the Court cannot conclude, as a matter of law, that Officer Cheatham had probable cause to arrest Mr. Shevlin for disorderly conduct. While Mr. Shevlin admits that he engaged in a loud and profane confrontation with Mr. Gray, that fact alone does not support a finding of probable cause, as a brief argument does not rise to the level of "turbulent conduct" that qualifies as disorderly conduct. Although Officer Cheatham alleges that Mr. Shevlin engaged in additional conduct that might support a finding of probable cause, such as putting his fist in the officer's face while using profane language, and continuing to yell and be disruptive as he was escorted out of the hospital, these facts are contested by Mr. Shevlin. Indeed, Mr. Shevlin has introduced evidence based upon which a reasonable jury might conclude that the alleged turbulent behavior was fabricated by Officer Cheatham. In particular, he has introduced deposition testimony from himself and from other witnesses indicating that, after his initial encounter with Mr. Gray, he spoke in a relatively quiet tone of voice and acted in a reasonable manner throughout his encounter with the hospital staff and police officers. Thus, there remains a genuine issue of material fact as to whether Officer Cheatham had probable cause to arrest Mr. Shevlin on a charge of disorderly conduct.

Therefore, the Court **DENIES** the Defendant's Motion for Summary Judgment on the Plaintiff's claim brought pursuant to 42 U.S.C. § 1983 for violation of his Fourth Amendment rights based on an arrest that was effectuated without probable cause.

**2. First Amendment**

■ The First Amendment to the United States Constitution provides, in pertinent part, "Congress shall make no law . . . abridging the freedom of speech. . . ." U.S. CONST. amend. I. Retaliatory acts by state officers, including arrests, for the exercise of First Amendment rights provide a proper basis for actions under 42 U.S.C. § 1983. "[A]dverse state action 'motivated at least in part as a response to the exercise of the plaintiff's constitutional rights' presents an actionable claim of retaliation." *McCurdy v. Montgomery County, Ohio,* 240 F.3d 512, 520 (6th Cir. 2001) (citation omitted). This type of retaliatory act by an officer is referred to as vindictive enforcement, which is a type of selective enforcement. *See Futernick v. Sumpter Township,* 78 F.3d 1051, 1056 n.

7 (6th Cir.1996). To succeed on a claim of vindictive enforcement, the plaintiff must show: (1) the exercise of a protected right; (2) the officer's stake in the deterrence of the exercise of that right; (3) the unreasonableness of the officer's conduct; and (4) that the enforcement was intended to punish the plaintiff for the exercise of the protected right. *Id.* (citing *United States v. Anderson,* 923 F.2d 450, 453 (6th Cir. 1991)).

■ The Court finds that Mr. Shevlin has failed to allege material facts necessary to support his First Amendment claim. Specifically, assuming that Mr. Shevlin was engaged in an activity protected by the First Amendment at the time of this incident, he has presented no evidence tending to show that Officer Cheatham has a stake in deterring the exercise of that right. In addition, he has failed to present any evidence that would support a finding that the arrest effectuated by Officer Cheatham was in any way intended to punish Mr. Shevlin for the exercise of his constitutional rights.

Therefore, the Court **GRANTS** the Defendant's Motion for Summary Judgment as to the Plaintiff's claim brought pursuant to 42 U.S.C. § 1983 for violation of the Plaintiff's First Amendment rights.

### B. Intentional Infliction of Emotional Distress

Both Thomas and Amy Shevlin have asserted claims against Officer Cheatham for intentional infliction of emotional distress. This is Mrs. Shevlin's only claim against the Defendant.

■ The Court finds that the Plaintiffs' claim of intentional infliction of emotional distress is barred by the doctrine of collateral estoppel, or issue preclusion, as Judge Sargus has already adjudicated this claim in the previously filed case. Four factors must be present for a court to apply issue preclusion: "(1) the precise issue raised in the present case must have been raised and actually litigated in the prior proceeding; (2) determination of the issue must have been necessary to the outcome of the prior proceeding; (3) the prior proceeding must have resulted in a final judgment on the merits; and (4) the party against whom estoppel is sought must have had a full and fair opportunity to litigate the issue in the prior proceeding." *N.L.R.B. v. Kentucky May Coal Co., Inc.,* 89 F.3d 1235, 1239 (6th Cir.1996) (citing *N.A.A.C.P., Detroit Branch v. Detroit Police Officers Ass'n,* 821 F.2d 328, 330 (6th Cir.1987)). Each of these factors applies here.

First, the Plaintiffs raised their claim of intentional infliction of emotional distress in the case that was brought before Judge Sargus, and actually litigated that claim. Second, although Judge Sargus' ruling pertained directly to the Plaintiffs' claim against the hospital, not Officer Cheatham, the determination that Officer Cheatham could not be liable for intentional infliction of emotional distress was a necessary predicate to the grant of summary judgment in favor of Children's Hospital. Specifically, Judge Sargus stated:

> From these facts, the plaintiffs cannot sustain under Ohio Law a claim for intentional infliction of emotional harm. With respect to these claims, the Court does not evaluate whether the conduct of Officer Cheatham or other hospital employees was excessive or negligent. Instead, the Court must determine, as a matter of law, under the standards set forth in *Yeager,* whether the conduct was 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency.' *Id.* at 375, 453 N.E.2d 666. Such conclusion cannot be drawn from the facts presented by the plaintiffs. Summary judgment is

therefore appropriate with respect to the plaintiffs' claim against Children's Hospital for intentional infliction of emotional harm.

Opinion and Order, 2:98–CV–680, at 11. Based on this language, it is clear that Judge Sargus' ruling that the hospital could not be liable for intentional infliction of emotional distress for its failure to train its staff was based on the predicate finding that nothing done by either Officer Cheatham or any other hospital employee was extreme or outrageous. Third, the prior proceeding resulted in a final decision on the merits. Finally, the Plaintiffs, as the party against whom estoppel is now sought, had a full and fair opportunity to litigate this issue before Judge Sargus.

Alternatively, even if the Plaintiffs' claim of intentional infliction of emotional distress is not barred by collateral estoppel, Officer Cheatham is nonetheless entitled to summary judgment because the Plaintiffs have failed to present evidence that can support the essential elements of their claim.

■ To prove a claim of intentional infliction of emotional distress, the plaintiff must show that the defendant intentionally or recklessly caused him serious emotional distress by extreme and outrageous conduct. *McNeil v. Case W. Reserve Univ.*, 105 Ohio App.3d 588, 664 N.E.2d 973, 975 (1995) (citing *Yeager v. Local Union 20*, 6 Ohio St.3d 369, 453 N.E.2d 666 (1983)). The behavior complained of must go beyond the intentionally tortious or even the criminal. *Yeager*, 453 N.E.2d at 671. Indeed, the conduct must be so extreme and outrageous as " 'to be regarded as atrocious, and utterly intolerable in a civilized community.' " *Id.* at 671 (quoting Rest.2d of Torts § 46, cmt. d (1965)).

Furthermore, the emotional distress allegedly suffered must be serious. *Id.* To defeat a motion for summary judgment on a claim of intentional infliction of emotional distress, the plaintiff must present evidence sufficient to create a genuine issue of material fact as to the defendant's behavior and the severity of the injury suffered. *McNeil*, 664 N.E.2d at 975–76; *see Uebelacker v. Cincom Systems, Inc.*, 48 Ohio App.3d 268, 549 N.E.2d 1210, 1220 (1988) (finding that the plaintiff raised a genuine issue of material fact as to his emotional distress when he submitted along with his pleadings an affidavit from his wife detailing the various symptoms of his distress).

Mrs. Shevlin bases her emotional distress claim on the fact that she watched her husband being escorted out of the hospital while in handcuffs, and then had to remain at the hospital on her own. At her deposition, she testified, specifically, that it was very difficult for her to go through her daughter's medical procedure the next morning on her own, and that Officer Cheatham took her husband away on the worst night of her life.[2]

■ These facts do not comport with the above standard for a claim of intentional infliction of emotional distress. First, the Plaintiffs have presented no evidence that Officer Cheatham's act of arresting Mr. Shevlin and escorting him out of the hospital either intentionally or recklessly caused Mrs. Shevlin severe emotional distress. Second, the act of arresting Mr. Shevlin does not constitute extreme or outrageous conduct. *See Piro v. Franklin Township*, 102 Ohio App.3d 130, 656 N.E.2d 1035, 1043 (1995) (finding that an

---

**2.** The Plaintiffs have not set forth the precise facts upon which Mr. Shevlin bases his claim

for intentional infliction of emotional distress.

officer's arrest of an individual based on a finding of probable cause did not constitute extreme or outrageous conduct). Finally, the Plaintiffs have presented no evidence that they suffered severe emotional distress. The fact that Mrs. Shevlin testified that she "had a hard time" dealing with the situation is not sufficient to raise a genuine issue of material fact in this regard.

Therefore, the Court **GRANTS** the Defendant's Motion for Summary Judgment on the Plaintiffs' claim of intentional infliction of emotional distress.

### C. Immunity

#### 1. Qualified Immunity

Defendant Officer Cheatham claims that he is entitled to qualified immunity from Mr. Shevlin's claim, brought pursuant to 42 U.S.C. § 1983, that the Defendant violated his Fourth Amendment rights by effectuating an arrest without probable cause.

■ Government officials sued in their individual capacities are entitled to seek qualified immunity. *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Qualified immunity extends to individuals performing discretionary functions, unless their actions violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* The Sixth Circuit has created a three-part test to determine whether a particular defendant is entitled to qualified immunity. Pursuant to that test, the Court is to examine: (1) whether the facts taken in the light most favorable to plaintiff could establish a constitutional violation; (2) whether the right was a "clearly established" right of which any reasonable officer would have known; and (3) whether the official's actions were objectively unreasonable in light of that clearly established right. *Ris-*

*bridger v. Connelly,* 275 F.3d 565, 569 (6th Cir.2002) (citing *Williams v. Mehra,* 186 F.3d 685, 691 (6th Cir.1999) (*en banc* )). A right is "clearly established" if "[a] reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).

■ "Although the application of qualified immunity comprises a legal issue, summary judgment is inappropriate when conflicting evidence creates subordinate predicate factual questions which must be resolved by a fact finder at trial." *Hamilton v. Myers,* 281 F.3d 520, 531 (6th Cir. 2002) (citing *Anderson,* 483 U.S. at 641, 107 S.Ct. 3034). While the defendant bears the initial burden of setting forth facts tending to show that he is entitled to qualified immunity, the burden then shifts to the plaintiff to prove that a defendant is not entitled to qualified immunity because he violated clearly established rights. *Gardenhire v. Schubert,* 205 F.3d 303, 311 (6th Cir.2000).

■ Applying the Sixth Circuit's three-part test, the Court finds that Officer Cheatham is not entitled to qualified immunity. First, when the facts are viewed in the light most favorable to Mr. Shevlin, it appears that Officer Cheatham may have violated Mr. Shevlin's Fourth Amendment rights by arresting him for disorderly conduct without probable cause to do so. *See* discussion *supra* Part IV.A.1. Second, at the time of this incident, it was clearly established that an arrest that was not supported by probable cause violated the Fourth Amendment. *See Gardenhire,* 205 F.3d at 313 (citing *Dunaway v. New York,* 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979)). Third, the Court cannot conclude that the officer's actions were objectively reasonable in light of Mr. Shevlin's clearly established Fourth Amendment right.

The Plaintiff presents evidence that he spoke in a quiet tone and behaved in a reasonable manner in the presence of Officer Cheatham. Officer Cheatham disputes that version of events (i.e. the Defendant contends that Mr. Shevlin used profane language as he gestured toward the officer in a threatening manner). The key facts upon which the reasonableness determination turns, therefore, remain in dispute. Thus, a grant of qualified immunity would be improper.

Therefore, the Court finds that the Defendant is not entitled to qualified immunity, and **DENIES** the Defendant's Motion for Summary Judgment on that basis.

### 2. Ohio Statutory Immunity

The Defendant claims that, under state law, he is entitled to immunity from the Plaintiffs' state law claims of assault and battery and false imprisonment.

The immunity for employees of political subdivisions is provided by Ohio Rev.Code § 2744.03(A)(6), which provides in relevant part:

> In a civil action brought against … an employee of a political subdivision to recover damages for injury, death, or loss to persons or property allegedly caused by any act or omission in connection with a governmental or proprietary function, … the employee is immune from liability unless one of the following applies:
>
> (a) The employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities;
>
> (b) The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner;

(c) Liability is expressly imposed upon the employee by a section of the Revised Code.

OHIO REV.CODE § 2744.03(A)(6). A police officer is an employee of a political subdivision, and, as such, is generally protected by this grant of statutory immunity. *Mayes v. Columbus,* 105 Ohio App.3d 728, 664 N.E.2d 1340, 1348 (1995).[3] Pursuant to the statute, a police officer cannot be held personally liable for mere negligence, but only for actions that fall into one of the above statutory exceptions to the immunity. *Fabrey v. McDonald Village Police Dept.,* 70 Ohio St.3d 351, 639 N.E.2d 31, 36 (1994).

To act with a "malicious purpose" is to act with a "willful and intentional design to do injury or the intention or desire to harm another, usually seriously, through conduct which is unlawful or unjustified." *Cook v. City of Cincinnati,* 103 Ohio App.3d 80, 658 N.E.2d 814, 821 (1995) (citations omitted). " 'Bad faith' involves a dishonest purpose, conscious wrongdoing, … or an actual intent to mislead or deceive another." *Id.* (citing *Jackson v. Butler County Bd. of Commrs.,* 76 Ohio App.3d 448, 602 N.E.2d 363 (1991)). The failure to exercise any care whatsoever constitutes "wanton" misconduct. *Fabrey,* 639 N.E.2d at 35 (citing *Hawkins v. Ivy,* 50 Ohio St.2d 114, 363 N.E.2d 367 (1977)). "Recklessness" refers to an act done while knowing or having reason to know of facts that would lead a reasonable person to believe that the conduct creates an unreasonable risk of harm and that this risk is substantially greater than that necessary to make the conduct negligent. *Thompson v. McNeill,* 53 Ohio St.3d 102, 559 N.E.2d 705, 708 (1990) (citing Rest.2d of Torts § 500 (1965)).

---

**3.** Judge Sargus has already found, and the parties do not dispute, that Officer Cheatham was acting as a police officer, not a hospital security guard, when he arrested Mr. Shevlin.

■ Although the defendant employee bears the burden of raising the immunity defense, the plaintiff bears the ultimate burden of proving that the employee's conduct falls within one of the three exceptions to immunity. *Ross v. Trumbull County Child Support Enforcement Agency*, 2001 WL 114971, at *6 (Ohio App. Feb. 9, 2001) (citations omitted). The Court is to begin, however, with the presumption of immunity. *Cook*, 658 N.E.2d at 821. Therefore, Officer Cheatham is entitled to immunity on the Plaintiffs' state law claims unless Mr. Shevlin can demonstrate that the officer's actions fall within one of the three exceptions to the immunity.

During the hearing on the Defendant's Motion, the Plaintiff argued that Officer Cheatham is not entitled to statutory immunity because his conduct in arresting Mr. Shevlin was either done with a malicious purpose, in bad faith, or in a wanton or reckless manner. He focused, in particular, on the possibility that a jury would find that the officer's conduct was reckless.

■ The issue of whether an officer's actions are done with a malicious purpose, in bad faith, or in a wanton or reckless manner usually is appropriate for resolution by the trier of fact. *See Fabrey*, 639 N.E.2d at 35 ("the issue of wanton misconduct is normally a jury question"); *Potter v. Troy*, 78 Ohio App.3d 372, 604 N.E.2d 828, 837–38 (1992) (finding that the lower court erred in granting summary judgment on immunity grounds where there was a genuine issue of material fact as to whether city employees acted with malicious purpose, in bad faith, or in a wanton or reckless manner). In particular, Ohio courts have found that summary judgment on immunity grounds is improper where there is a genuine issue of fact as to whether an officer had probable cause to effectuate an arrest, and whether, in making the arrest, his actions may· have been reckless. *See Hicks v. Leffler,* 119 Ohio App.3d 424, 695 N.E.2d 777, 780–81 (1997) (reversing the lower court's grant of summary judgment in favor of an officer who had effectuated an arrest that may have been improper under the circumstances); *Mayes,* 664 N.E.2d at 1349 (concluding that the defendant police officers were not entitled to immunity on the plaintiff's claim of malicious prosecution where the facts, viewed in the light most favorable to the plaintiff, indicated that the officers had arrested the plaintiff without probable cause).

When the facts here are viewed in the light most favorable to the Plaintiff, it appears that Officer Cheatham may have lacked probable cause to arrest Mr. Shevlin on a charge of disorderly conduct. As discussed above, there remains a genuine issue of fact in this regard. At trial, the Plaintiff may be able to demonstrate that, in fact, he was only loud for a brief period of time, that he otherwise remained calm and reasonable, and that even when he was loud, he was located far from any patients in the hospital. If a jury finds all of this to be true, the jury may also find that, in arresting Mr. Shevlin, Officer Cheatham knew or should have known of facts that would cause a reasonable person to believe that his conduct in effectuating the arrest created an unreasonable risk of harm, and that his conduct went beyond mere negligence. Under these circumstances, the trier of fact must resolve the issue of whether the officer acted with a malicious purpose, in bad faith, or in a wanton or reckless manner, so as to deny him the statutory immunity to which he is otherwise entitled.

Therefore, the Court **DENIES** the Defendant's Motion for Summary Judgment on the Plaintiffs' state law claims of assault and battery and false imprisonment.

## V. CONCLUSION

Based on the foregoing analysis, the Court **GRANTS** the Defendant's Motion for Partial Summary Judgment on the Plaintiffs' claim of intentional infliction of emotional distress, and the claim brought pursuant to 42 U.S.C. § 1983 for violation of Mr. Shevlin's First Amendment rights. The Court **DENIES** the Defendant's Motion for Partial Summary Judgment on the Plaintiff's claims of assault and battery, and false imprisonment, and the claim brought pursuant to 42 U.S.C. § 1983 for violation of Mr. Shevlin's Fourth Amendment rights. The Court hereby **DISMISSES** Amy Shevlin as a party to this matter.

**IT IS SO ORDERED.**