OPINION
{¶ 1} Plaintiff-appellant, Patrick Flynn, appeals from a judgment of the Franklin County Court of Common Pleas that granted summary judgment in favor of defendant-appellee, Chuck Okafor, on plaintiff's claim of malicious prosecution. For the following reasons, we affirm.
 {¶ 2} Chuck Okafor is the proprietor of Dirty Dungarees, which is a laundry and bar that is located on Karl Road in Columbus, Ohio. According to Okafor, on December 2, 2000, a man, who was known to Okafor as "Patrick Flynn," threatened Okafor and his customers, and damaged property in Okafor's establishment. This same man, who was a regular customer of Dirty Dungarees, previously had engaged in similar conduct in Okafor's establishment.
 {¶ 3} On December 15, 2000, Okafor went to the city prosecutor's office to obtain a restraining order against "Patrick Flynn." While at the city prosecutor's office, Okafor met with an intake officer. This intake officer reviewed a form that Okafor had completed and attempted to gather information about the alleged perpetrator from a computer database. The intake officer found an entry for a "Patrick Flynn," which the intake officer apparently surmised contained information about the alleged perpetrator.
 {¶ 4} The intake officer then drafted two misdemeanor complaints, which accused plaintiff of disorderly conduct and criminal damaging. An assistant prosecuting attorney reviewed the complaints and added arrest warrants. The intake officer who had prepared the complaints escorted Okafor to the municipal clerk of court. After being directed to do so, Okafor signed the complaints, which were then filed.
 {¶ 5} At a later date, plaintiff was arrested and jailed for a short time. After posting bond, plaintiff was released. The case eventually proceeded to trial. At trial, it was determined that plaintiff was mistakenly identified as the alleged perpetrator, and the case was dismissed at the request of the prosecuting attorney.
 {¶ 6} On October 19, 2001, plaintiff sued Okafor, claiming malicious criminal prosecution. Okafor, who initially proceeded pro se, answered the complaint and filed a cross-complaint against the city of Columbus and an unidentified assistant city prosecutor. In his cross-complaint, Okafor sought indemnification for any liability that might be imposed. After Okafor filed his answer and cross-complaint, counsel entered an appearance on behalf of Okafor.
 {¶ 7} On December 19, 2001, pursuant to Civ.R. 41(A)(1)(a), Okafor voluntarily dismissed without prejudice all claims against the city of Columbus and the unidentified assistant city prosecutor.
 {¶ 8} Later, after receiving plaintiff's consent and leave of court, on January 15, 2002, Okafor filed an amended answer. On May 23, 2002, pursuant to Civ.R. 12(C), plaintiff moved for judgment on the pleadings.
 {¶ 9} Okafor later moved for summary judgment. Pursuant to Civ.R. 56(F), plaintiff moved the trial court to refuse Okafor's summary judgment motion and to grant plaintiff additional time to respond to Okafor's motion for summary judgment. The trial court granted plaintiff's Civ.R. 56(F) motion. (November 19, 2003 decision, at 4.)
 {¶ 10} Subsequently, plaintiff moved the trial court for leave to file a motion for summary judgment out-of-rule, and contemporaneously plaintiff moved for summary judgment. The trial court granted plaintiff's motion to file a summary judgment motion out-of-rule. Id.
 {¶ 11} On December 9, 2003, the trial court rendered judgment wherein it granted Okafor's motion for summary judgment, denied plaintiff's motion for summary judgment, and denied plaintiff's motion for judgment on the pleadings.
 {¶ 12} Plaintiff timely appeals from the trial court's judgment and assigns a single error:
The trial court erred when it granted defendant's motion for summary judgment on plaintiff's claim of malicious prosecution.
 {¶ 13} Preliminarily, we observe that plaintiff only challenges the trial court's grant of summary judgment in favor of defendant. Plaintiff does not challenge the trial court's denial of plaintiff's motions for judgment on the pleadings or summary judgment.
 {¶ 14} Appellate review of a trial court's granting of summary judgment is de novo. Mitnaul v. Fairmount PresbyterianChurch, 149 Ohio App.3d 769, 2002-Ohio-5833, at ¶ 27. "`De novo review means that this court uses the same standard that the trial court should have used, and we examine the evidence to determine whether as a matter of law no genuine issues exist for trial.'" Id., quoting Brewer v. Cleveland City Schools Bd. ofEdn. (1997), 122 Ohio App.3d 378, citing Dupler v. MansfieldJournal Co., Inc. (1980), 64 Ohio St.2d 116, 119-120, certiorari denied (1981), 452 U.S. 962, 101 S.Ct. 3111. Summary judgment is proper when a movant for summary judgment demonstrates that: (1) no genuine issue of material fact exists; (2) the movant is entitled to judgment as a matter of law; and (3) reasonable minds could come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence most strongly construed in its favor. Civ.R. 56; State ex rel. Gradyv. State Emp. Relations Bd. (1997), 78 Ohio St.3d 181, 183.
 {¶ 15} Under Civ.R. 56(C), a movant bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record demonstrating the absence of a material fact. Dresher v. Burt (1996),75 Ohio St.3d 280, 293. Once a movant discharges its initial burden, summary judgment is appropriate if the nonmoving party does not respond, by affidavit or as otherwise provided in Civ.R. 56, with specific facts showing that a genuine issue exists for trial.Dresher, at 293; Vahila v. Hall (1997), 77 Ohio St.3d 421,430; Civ.R. 56(E).
 {¶ 16} "Ohio law, like the English common law before it, has long recognized a right to recover in tort for the misuse of civil and criminal actions as a means of causing harm. * * * Our jurisprudence has developed two lines of cases, one involving claims of malicious prosecution founded on criminal proceedings, and the other involving claims of malicious prosecution founded on civil proceedings." Trussell v. General Motors Corp. (1990),53 Ohio St.3d 142, 144. "The tort of malicious criminal prosecution compensates the plaintiff for the damage to dignity and reputation caused by false accusation of a crime. * * * The damage occurs whether the plaintiff is arrested or * * * haled into court on a summons. Unlike the victim of malicious civil prosecution, the victim of false criminal charges does not have the remedies provided by Civ.R. 11." Id. at 145-146.
 {¶ 17} In Ohio, actions for malicious prosecution have been met with marked disfavor by courts, and courts have allowed recovery only when requirements of these actions have been fully complied with. Nader v. McBride (June 19, 1980), Cuyahoga App. No. 39641. See, also, Waller v. Foxx (Oct. 6, 1982), Hamilton App. No. C-810568, quoting Miller v. Omar Baking Co. (1937), 24 Ohio Law Abs. 375, 380 (observing that in an action for malicious prosecution "`[t]he disfavor with which the action is looked upon is especially marked in cases where the suit is being brought against the plaintiff, as public policy favors the exposure of crime * * *'").
 {¶ 18} "A private person who initiates or procures the institution of criminal proceedings against another is not subject to liability unless the person against whom the proceedings were initiated proves all three of the following elements: (1) malice in instituting or continuing the prosecution, (2) lack of probable cause for undertaking the prosecution, and (3) termination of the prosecution in favor of the accused." Fair v. Litel Communication, Inc. (Mar. 12, 1998), Franklin App. No. 97APE06-804, citing Ash v. Ash (1995),72 Ohio St.3d 520, citing Trussell, supra, at 146. See, also,Rogers v. Barbera (1960), 170 Ohio St. 241, paragraph one of the syllabus; Waller, supra (observing that a plaintiff in an action for malicious prosecution has the burden of proving by a preponderance of the evidence all the elements of a claim of malicious prosecution).
 {¶ 19} With respect to the element of malice, "[t]he requirement of malice turns directly on the defendant's state of mind. Malice is the state of mind under which a person intentionally does a wrongful act without a reasonable lawful excuse and with the intent to inflict injury or under circumstances from which the law will infer an evil intent. * * * For purposes of malicious prosecution it means an improper purpose, or any purpose other than the legitimate interest of bringing an offender to justice." Criss v. Springfield Twp.
(1990), 56 Ohio St.3d 82, 84-85, rehearing denied (1991),57 Ohio St.3d 611. "In determining whether a criminal prosecution was instituted or continued for an improper purpose, inquiry must be made into the basis for the decision. In the absence of evidence showing a basis for the decision, it will appear to have been made without any basis, i.e., maliciously." Mayes v. Columbus
(1995), 105 Ohio App.3d 728, 737, citing Criss, at 85. See, also, Skarbinski v. Henry H. Krause Co. (C.A. 6, 1967),378 F.2d 656, 658 (construing Ohio law) (observing that "[t]he sum and substance of a suit for malicious prosecution is that there must be malice either in institution or in continuing the prosecution. It is not malice in the common acceptance of the term that is the necessary ingredient, but rather malice in the legal sense of a wrongful act intentionally done without just cause. The `malice' sufficient to support such a cause of action may be either express or implied and has been defined as that state of mind under which a person does a wrongful act purposely, without a reasonable or lawful excuse, to the injury of another").
 {¶ 20} In his deposition, as upon cross-examination, Okafor testified:
Q. Okay. After you filed [the complaints], what did you think was going to happen?
MR. MULLER [Okafor's attorney]: Objection.
A. I did not file this.
Q. You didn't file it?
A. The lady filed it. She walked me downstairs and give it to them and told me we are done, you can leave.
Q. Okay. But you wanted to file charges against the Patrick Flynn at the bar, right?
A. No.
Q. You did not?
A. No.
Q. What did you think this was?
A. I came for restraining order to get a restraining order to restrain him from coming to my bar.
Q. You went to the Franklin County Municipal prosecutor for a restraining order?
A. Yes.
Q. Okay. And they didn't tell you that they couldn't do that for you?
A. No.
Q. Are you telling me that you didn't understand that you were filing two criminal complaints against my client Patrick Flynn?
MR. MULLER: Objection.
A. I did not file a complaint against your client.
Q. But you agreed you signed [the complaints], right?
A. I did.
Okafor Deposition, filed August 8, 2002, at 37-38.
 {¶ 21} Even construing the evidence in favor of plaintiff, the evidence supports Okafor's contention that he contacted the prosecutor's office for the purpose of obtaining a restraining order against a "Patrick Flynn" and that he did not contact the city prosecutor's office with an intention of seeking criminal charges against plaintiff. Furthermore, construing the evidence in favor of plaintiff, we do not find the evidence supports a finding that Okafor contacted the city prosecutor's office for an improper purpose — although we do acknowledge that Okafor was misguided when he sought a restraining order from the city prosecutor's office, rather than from a court. Additionally, we find plaintiff has not proffered evidence of the kind required under Civ.R. 56(E) to rebut Okafor's contentions. Moreover, after it was discovered that plaintiff mistakenly had been identified as the alleged perpetrator, the proceedings against plaintiff were terminated. Thus, there is no evidence that the prosecution improperly continued after plaintiff's mistaken identity was discovered.
 {¶ 22} Plaintiff argues, however, that defendant lacked probable cause to accuse plaintiff of disorderly conduct and criminal damaging and, therefore, absent probable cause, malice should be inferred. See, e.g., Melanowski v. Judy (1921),102 Ohio St. 153, paragraph one of the syllabus (holding that "[i]n an action for malicious prosecution, the want of probable cause is the gist of the action. If such be proven, the legal inference may be drawn that the proceedings were actuated by malice"). See, also, Donohoe v. Burd (S.D.Ohio 1989), 722 F. Supp. 1507, 1518, affirmed (C.A. 6, 1991), 923 F.2d 854, citing Melanowski, supra, at 155-156; Detling v. Chockley (1982), 70 Ohio St.2d 134, overruled on other grounds, Cabe v. Lunich (1994),70 Ohio St.3d 598 (construing Ohio law) (observing that in a claim for malicious prosecution "[m]alice may, but need not be, inferred from the absence or lack of probable cause[.] * * * The existence of malice is determined from all the facts and circumstances in the evidence").
 {¶ 23} We find Melanowski, supra, is factually distinguishable and plaintiff's reliance upon Melanowski is therefore not persuasive.
 {¶ 24} In Melanowski, Leo Melanowski asked a druggist whether he knew of anyone who would be available to clean Melanowski's apartment. Melanowski was directed to James Judy who agreed to do the work and who suggested to Melanowski that he could arrange the assistance of a young woman to help him. After the cleaning had been finished, Melanowski discovered that his watch and chain had been stolen. Melanowski reported the incident to the police, who advised Melanowski to go to the prosecutor. Melanowski then sought the advice of counsel. Later, Melanowski and his attorney went to the prosecutor's office where the circumstances of the theft were related to the prosecutor. Judy was later arrested and confined in jail for a short time until he was released on bail. Subsequently, the young woman who had assisted Judy confessed to the theft and the prosecution against Judy was thereupon nollied.
 {¶ 25} Thereafter, Judy successfully sued Melanowski for malicious prosecution in the trial court. After a remittitur was entered for part of the judgment, an appellate court affirmed the judgment. However, on appeal, finding the trial court erred in admitting Judy's evidence of his character and general reputation, the Supreme Court of Ohio reversed the judgments of the trial court and appellate court. In reversing the judgments, the Melanowski court held that "[i]n an action for malicious prosecution, the want of probable cause is the gist of the action. If such be proven, the legal inference may be drawn that the proceedings were actuated by malice." Id. at paragraph one of the syllabus.
 {¶ 26} In Melanowski, the defendant did not mistakenly identify the plaintiff, as is the situation in the instant case. The person that Melanowski accused of theft was the same person whom Melanowski had hired to clean his apartment and the person whom Melanowski intended to accuse of theft. In Melanowski,
there was no mistaken identity concerning the accused. Rather, the relevant issue concerned whether Melanowski had probable cause to accuse Judy of theft. It is within this context that the Supreme Court of Ohio held that the absence of probable cause is the gist of an action for malicious prosecution, and if probable cause is proven to be absent, then a legal inference may be drawn that the proceedings were actuated by malice. Melanowski,
paragraph one of the syllabus.
 {¶ 27} Here, in contradistinction to Melanowski, Okafor mistakenly identified plaintiff as the alleged perpetrator. The person that Okafor accused was not the same person whom Okafor observed damaging property and threatening customers. See Deposition of Okafor, at 21-22. Thus, Melanowski is distinguishable.
 {¶ 28} In Burke v. Kearney (1935), 51 Ohio App. 287, 296, relying upon White v. Tucker (1866), 16 Ohio St. 468, the Court of Appeals for Hamilton County observed the following with respect to admissible evidence in a malicious prosecution action:
The elements of an action for malicious prosecution are malice, damage, and absence of probable cause. Therefore, everything tending to show whether defendant acted reasonably or unreasonably, and whether he acted maliciously or in good faith, under an honest belief in the plaintiff's guilt, was competent. What was said to the defendant, and by whom, whether in the presence of the plaintiff or not, would tend to prove the reason for his action.
See, also, Delchamps, Inc. v. Bryant (Ala. 1999),738 So.2d 824, 833 (a malicious prosecution case arising from a case of mistaken identity)[1] (observing that "[w]here no other reasonable explanation exists for the conduct of the defendant, malice may be inferred. * * * But the inference of malice from the lack of probable cause may be rebutted by evidence showing that the defendant acted in good faith. * * * Put another way, good faith can preclude a finding of malice on the defendant's part").
 {¶ 29} In his deposition, as upon cross-examination, Okafor testified:
Q. * * * On December 15th of 2000 you went down to the prosecutor's office in Municipal Court, correct?
A. Yes.
Q. And who did you see there?
A. I saw the receptionist who gave me a form to fill out or — I don't know if it's called a report, to report my case and I did that and gave it back to her. She took it into somebody who later came out and took me in and asked me some questions and gave me this form that you just showed me.
Q. Did you see one of the intake officers at the prosecutor's office?
A. Yes.
* * *
Q. Tell me about your meeting with her.
MR. MULLER: Objection. Go ahead.
A. She asked me what was going on. I told her what happened. She got into her computer, after awhile, you know, she said I think we got our man. She started filling out these forms. When she was done, she took me downstairs and I was asked to sign this.
Okafor Deposition, at 30-31. See, also, Affidavit of Jo Kaiser, dated June 27, 2002, at paragraph 6 (averring that Kaiser drafted the criminal misdemeanor complaints, including the plaintiff's address, social security number and date of birth, and Kaiser took the criminal misdemeanor complaints to an assistant city prosecutor for review); Affidavit of Robin Partin, dated June 7, 2002, at paragraphs 5 and 6 (averring that Partin reviewed the misdemeanor complaints that Kaiser prepared and determined there was probable cause to charge and arrest "Patrick Flynn" for the crimes alleged in the misdemeanor complaint).
 {¶ 30} Here, even construing the evidence in favor of plaintiff, we find reasonable minds could come to but one conclusion that, relying upon the city prosecutor's representative's representations, Okafor filed the complaints in good faith. Furthermore, construing the evidence in favor of plaintiff, we conclude that Okafor acted without malice when he initiated prosecution against plaintiff, although arguably Okafor's decision to prosecute plaintiff may have been underlain by possible negligence. See, e.g., Okafor Deposition, at 32 (agreeing with the assertion that when Okafor went to the prosecutor's office the only information that Okafor possessed was a name). But, see, Bryant, supra, at 833 (observing that "[s]imple negligence alone, therefore, may underlie a decision to institute a proceeding that later is shown to suffer from a want of probable cause, but an inference of malice cannot be drawn solely from such negligence, because the good faith of the actor under such circumstances can constitute a defense"); id. at 834 (stating that "when a case of mistaken identity is discovered and the error is corrected by striking the improperly sued party, there is no inference of malice"); Jenkins v. Gilligan (Iowa 1906), 108 N.W. 237, 238 (discussing the element of malice in an action for malicious prosecution).[2]
 {¶ 31} Nevertheless, having concluded that Okafor did not act with malice when he instituted the actions against plaintiff, we acknowledge that the evidence supports a finding that plaintiff has suffered some financial hardship in defense of the misdemeanor complaints that were brought against him. (Deposition of Patrick Flynn, filed August 8, 2002, at 48-52.) Nevertheless, despite possible financial hardship, under the facts of this case, absent a finding of malice, a claim of malicious prosecution cannot lie. See Trussell, supra, at syllabus (providing that malice in instituting or continuing the prosecution is a required element for the tort of malicious prosecution).
 {¶ 32} Therefore, based upon the evidence and construing it in favor of plaintiff, we conclude, as a matter of law, that the trial court did not err when it found Okafor had sustained his burden on summary judgment as to plaintiff's malicious prosecution claim.
 {¶ 33} Accordingly, based upon the foregoing, we overrule plaintiff's single assignment of error and affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
Klatt and Watson, JJ., concur.
[1] In Bryant, J.S. Bryant sued a grocery store for malicious prosecution following dismissal of a shoplifting case against him. The Supreme Court of Alabama held that, under the facts of that case, there was not sufficient evidence to support Bryant's claim for malicious prosecution concerning the store's decision to institute proceedings against Bryant. However, malice could be inferred based upon the store's decision to proceed with prosecution "in the face of its knowledge that there had not been a conclusive resolution of the facts surrounding J.S. Bryant's alibi." Id at 835.
[2] In Jenkins, the Supreme Court of Iowa observed: "Malice is distinguishable from mere negligence in that it arises from purpose, while negligence arises from absence of purpose. The characteristic of negligence is inadvertence or an absence of an intent to injure. This does not imply that the act was done involuntarily or unconsciously, but merely that the person doing it was not conscious that the act constituted a want of reasonable care. * * * If so conscious the act becomes malicious. The books agree that the prosecution need not have been prompted by malevolence or any corrupt design, nor necessarily involve spite or hatred toward the person accused. It is enough if it be the result of any improper or sinister motive and in disregard of the rights of others. * * * But to constitute malice there must have been (1) a motive or purpose, and (2) it must have been an improper one." Id. at 238.